**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK WINTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STRONGHOLD DIGITAL MINING, INC., GREGORY A. BEARD, RICARDO R. A LARROUDÉ, WILLIAM B. SPENCE, B. RILEY SECURITIES, INC., COWEN AND COMPANY, LLC, TUDOR, PICKERING, HOLT & CO. SECURITIES, LLC, D.A. DAVIDSON & CO., COMPASS POINT RESEARCH & TRADING, LLC, and NORTHLAND SECURITIES, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Mark Winter ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Stronghold Digital Mining, Inc. ("Stronghold" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Stronghold; and (c) review of other publicly available information concerning Stronghold.

## NATURE OF THE ACTION AND OVERVIEW

1.  This is a class action on behalf of persons and entities that purchased or otherwise acquired Stronghold Class A common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's October 2021 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against under the Securities Act of 1933 (the "Securities Act").

2.  Stronghold is a crypto asset mining company focused on mining Bitcoin. It wholly-owns and operates two low-cost, environmentally beneficial coal refuse power generation facilities in Pennsylvania.

3.  On October 21, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 7,690,400 shares of Class A common stock at a price of $19.00 per share. The Company received net proceeds of approximately $132.5 million from the Offering. The proceeds from the IPO were purportedly to be contributed to Stronghold LLC in exchange for Stronghold LLC Units, and

Stronghold LLC would purportedly use the net proceeds for general corporate purposes, including for acquisitions of miners and power generating assets.

4. On March 29, 2022, after the market closed, Stronghold announced its fourth quarter and full year 2021 financial results. The Company reported a net loss of $0.52 for the quarter, below analyst estimates of $0.04 earnings per share, and Stronghold's Chief Executive Officer cited "significant headwinds in our operations which have materially impacted recent financial performance."

5. On this news, the Company's stock price fell as much as $3.28, or 32%, to close at $6.97 per share on March 30, 2022.

6. By the commencement of this action, Stronghold stock has traded as low as $4.78 per share, a more than 75% decline from the $19 per share IPO price.

7. The Registration Statement was materially false and misleading and omitted to state: (1) that contracted suppliers, including MinerVa, were reasonably likely to miss anticipated delivery quantities and deadlines; (2) that, due to strong demand and pre-sold supply of mining equipment in the industry, Stronghold would experience difficulties obtaining miners outside of confirmed purchase orders; (3) that, as a result of the foregoing, there was a significant risk that Stronghold could not expand its mining capacity as expected; (4) that, as a result, Stronghold would likely experience significant losses; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13. Plaintiff Mark Winter, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Stronghold Class A common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Stronghold is incorporated under the laws of Delaware with its principal executive offices located in New York, New York. Stronghold's Class A common stock trades on the NASDAQ exchange under the symbol "SDIG."

15. Defendant Gregory A. Beard ("Beard") was, at all relevant times, the Chief Executive Officer and a Co-Chairman of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Ricardo R. A Larroudé ("Larroudé") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant William B. Spence ("Spence") was Co-Chairman of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendants Beard, Larroudé, and Spence are collectively referred to hereinafter as the "Individual Defendants."

19. Defendant B. Riley Securities, Inc. ("B. Riley") served as an underwriter for the Company's IPO. In the IPO, B. Riley agreed to purchase 3,062,786 shares of the Company's Class A common stock, exclusive of the over-allotment option.

20. Defendant Cowen and Company, LLC ("Cowen") served as an underwriter for the Company's IPO. In the IPO, Cowen agreed to purchase 2,382,687 shares of the Company's Class A common stock, exclusive of the over-allotment option.

21. Defendant Tudor, Pickering, Holt & Co. Securities, LLC ("Tudor") served as an underwriter for the Company's IPO. In the IPO, Tudor agreed to purchase 466,105 shares of the Company's Class A common stock, exclusive of the over-allotment option.

22. Defendant D.A. Davidson & Co. ("D.A. Davidson") served as an underwriter for the Company's IPO. In the IPO, D.A. Davidson agreed to purchase 310,291 shares of the Company's Class A common stock, exclusive of the over-allotment option.

23. Defendant Compass Point Research & Trading, LLC ("Compass Point") served as an underwriter for the Company's IPO. In the IPO, Compass Point agreed to purchase 232,718 shares of the Company's Class A common stock, exclusive of the over-allotment option.

24. Defendant Northland Securities, Inc. ("Northland") served as an underwriter for the Company's IPO. In the IPO, Northland agreed to purchase 232,718 shares of the Company's Class A common stock, exclusive of the over-allotment option.

25. Defendants B. Riley, Cowen, Tudor, D.A. Davidson, Compass Point, and Northland are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Stronghold Class A common stock pursuant and/or traceable to the Company's false and/or misleading Registration Statement and Prospectus issued in connection with the Company's IPO, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. The Company sold 7,690,400 shares of Class A common stock in the IPO. Moreover, record owners and other members of the Class may be identified from records maintained by Stronghold or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the Securities Act was violated by Defendants' acts as alleged herein;

(b)     whether the Registration Statement and statements made by Defendants to the investing public in connection with the Company's IPO omitted and/or misrepresented material facts about the business, operations, and prospects of Stronghold; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

32.     Stronghold is a crypto asset mining company focused on mining Bitcoin. It wholly-owns and operates two low-cost, environmentally beneficial coal refuse power generation facilities in Pennsylvania.

### The Company's False and/or Misleading
### Registration Statement and Prospectus

33.     On July 27, 2021, the Company filed its Registration Statement on Form S-1 with the SEC. On October 19, 2021, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective the same day.

34.     On October 21, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 7,690,400 shares of Class A common stock at a price of $19.00 per share. The Company received net proceeds of approximately $132.5 million from the Offering. The proceeds from the IPO were purportedly to be contributed to Stronghold LLC in exchange for Stronghold LLC Units, and Stronghold LLC would purportedly use the net proceeds for general corporate purposes, including for acquisitions of miners and power generating assets.

35.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

36. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

37. The Registration Statement touted the Company's "Competitive Strengths," including its ability to source Bitcoin miners:[1]

**Our Competitive Strengths**

\*   \*   \*

- *Superior access to Bitcoin miners with multiple miner procurement channels, including direct relationships with equipment manufacturers and partnerships with datacenter operators and other intermediaries.* We benefit from strong relationships with multiple providers of Bitcoin miners. ***We have entered into an agreement with a leading manufacturer of Bitcoin miners to purchase 15,000 miners with aggregate hash rate of approximately 1,500 PH/s for delivery between October 2021 and January 2022.*** In addition, through our partnership with a leading global manager of Bitcoin mining operations, we have executed a purchase agreement to acquire 9,900 MicroBT miners with phased delivery that began in September 2021 and have agreed to purchase terms for the acquisition of approximately 4,950 additional MicroBT miners. Finally, we have been highly opportunistic in entering into hardware purchase agreements with miner brokers. We believe that our access to capital, including prior private financings, as well as the proceeds from this initial public offering, in conjunction with our vertically-integrated power generation, makes us an attractive partner for Bitcoin equipment manufacturers and other market leaders alike.

38. The Registration Statement further described the "agreement . . . to purchase 15,000 miners" with Minerva Semiconductor Corp. ("MinerVa"), as follows:

On April 2, 2021, the Company entered into a purchase agreement (the "Minerva Purchase Agreement") with Minerva Semiconductor Corp ("Minerva") for the acquisition of 15,000 of their MV7 ASIC SHA256 model cryptocurrency miner equipment (miners) with a total terahash to be delivered equal to 1.5 million terahash (total terahash). The price per miner is $4,892.50 for an aggregate purchase price of $73,387,500 to be paid in installments. The first installment

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

8

equal to 60% of the purchase price, or $44,032,500, was paid on April 2, 2021, and an additional payment of 20% of the purchase price, or $14,677,500, was paid June 2, 2021. The remaining 20% is still owed and is scheduled to be made one month before the shipping date. The seller anticipates shipping no less than 15,000 miners by January 2022. ***Anticipated delivery quantities and timeframe will be no less than 2,500 miners by October 31, 2021, no less than 5,000 miners by November 30, 2021, no less than 5,000 by December 31, 2021, and the remaining 2,500 by January 2022.*** The aggregate purchase price does not include shipping costs, which are the responsibility of the Company and shall be determined at which time the miners are ready for shipment.

39. The Registration Statement purported to warn that "*if*" suppliers do not provide the agreed miners as expected, the Company's operations "could" be materially affected:

> ***We are dependent on third-party brokers and direct suppliers to source some of our miners, and failure to properly manage these relationships, or the failure of these brokers or suppliers to perform as expected, could have a material adverse effect on our business, prospects or operations.***
>
> We currently rely on third-party brokers and direct suppliers to source some of our miners. We have no assurance that business interruptions will not occur as a result of the failure by these brokers or suppliers to perform as expected, including the failure to locate acceptable or sufficient miners for our purchase. Many of the competitors in our industry have also been purchasing mining equipment at scale, which has caused a world-wide shortage of mining equipment and extended the corresponding delivery schedules for new miner purchases. We cannot ensure that our brokers or suppliers will continue to perform services to our satisfaction or on commercially reasonable terms. ***The recent increased demand for miners has also limited the supply of miners that brokers may source for us.*** Our brokers or suppliers may also decline our orders to fulfill those of our competitors, putting us at competitive harm. There are no assurances that any miner manufacturers will be able to keep pace with the surge in demand for mining equipment. Further, resource constraints or regulatory actions could also impact our ability to obtain and receive miners. For example, China has been experiencing power shortages, and certain of our miner suppliers have been impacted by related intermittent power outages. Additionally, certain companies, including Bitmain, may move their production of miners out of China and into other countries following the September 2021 blanket ban on crypto mining and transactions by Chinese regulators. Such power outages and production relocations could result in cancellations or delays and may negatively impact our ability to receive mining equipment on a timely basis or at all. ***If our brokers or suppliers are not able to provide the agreed services at the level of quality and quantity we require or become unable to handle the volume of miners we seek, we may not be able to replace such brokers or suppliers in a timely manner.*** Any delays, interruption or increased costs could have a material adverse effect on our business, prospects or operations.

9

(First emphasis in original.)

40. However, the Registration Statement also touted Stronghold's ability to expand mining capacity: "While many of our competitors have struggled to obtain mining equipment due to historically strong demand and pre-sold supply, we believe that these recent confirmed purchase orders demonstrate our ability to leverage the breadth of our relationships to quickly expand our mining capacity."

41. The Registration Statement was materially false and misleading and omitted to state: (1) that contracted suppliers, including MinerVa, were reasonably likely to miss anticipated delivery quantities and deadlines; (2) that, due to strong demand and pre-sold supply of mining equipment in the industry, Stronghold would experience difficulties obtaining miners outside of confirmed purchase orders; (3) that, as a result of the foregoing, there was a significant risk that Stronghold could not expand its mining capacity as expected; (4) that, as a result, Stronghold would likely experience significant losses; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Subsequent Disclosures

42. On March 29, 2022, after the market closed, Stronghold announced its fourth quarter and full year 2021 financial results in a press release. The Company reported a net loss of $0.52 for the quarter, below analyst estimates of $0.04 earnings per share, and Defendant Beard cited "significant headwinds in our operations which have materially impacted recent financial performance."

43. The same day, Stronghold held a conference call in connection with these financial results. During the call, Defendant Beard cited "two key factors that have negatively impacted [Stronghold's] operations and near-term growth trajectory." He stated:

10

> There are two key factors that have negatively impacted our operations and near-term growth trajectory. We estimate these factors collectively created a $40 million to $45 million reductions in cash flow to date, relative to our base case plan. As many of you know, we placed an order for miners with a miner manufacturer called MinerVa in 2021. Additionally, MinerVa presented a compelling value proposition for the price of roughly $50 per terahash, a significant discount to prevailing market rates.
>
> However, **_to-date we have only received approximately 3300 out of the 15,000 miners originally ordered from MinerVa that were scheduled for delivery by December, as they have continually fallen short of contractual and communicated delivery timelines._** Based on what we know today in our recent communications with MinerVa, we cannot provide any definitive guidance after the timing of future deliveries. We are evaluating all appropriate avenues to extract value from MinerVa and also proactively removed all MinerVa and miners from the collateral-based supporting our equipment financing agreements. Additionally, operations with our datacenter build-out partner have progressed slower than expected. Miner deliveries associated with the build-out were moderately delayed and commissioning of the datacenter has progressed slower-than-expected, largely driven by delayed deliveries of the datacenter pods with only four of the 24 pods currently operational, relative to plans to have all 24 commissioned by year-end 2021.

44. On this news, the Company's stock price fell as much as $3.28, or 35%, to close at $6.97 per share on March 30, 2022.

45. By the commencement of this action, Stronghold stock was trading as low as $4.78 per share, a 75% decline from the $19 per share IPO price.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act

### (Against All Defendants)

46. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

47. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

11

48. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

49. Stronghold is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

50. As issuer of the shares, Stronghold is strictly liable to Plaintiff and the Class for the misstatements and omissions.

51. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

52. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

53. Plaintiff acquired Stronghold shares pursuant and/or traceable to the Registration Statement for the IPO.

54. Plaintiff and the Class have sustained damages. The value of Stronghold Class A common stock has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

**Violation of Section 15 of the Securities Act**

**(Against the Individual Defendants)**

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

57. The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Stronghold within the meaning of Section 15 of the Securities Act. The Individual Defendants had the power and influence and exercised the same to cause Stronghold to engage in the acts described herein.

58. The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

59. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

| | |
|---|---|
| Dated: April 14, 2022 | By: */s/ Gregory B. Linkh*<br>**GLANCY PRONGAY & MURRAY LLP**<br>Gregory B. Linkh (GL-0477)<br>230 Park Ave., Suite 358<br>New York, NY 10169<br>Telephone: (212) 682-5340<br>Facsimile: (212) 884-0988<br>glinkh@glancylaw.com<br><br>Robert V. Prongay<br>Charles H. Linehan<br>Pavithra Rajesh<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Telephone: (310) 201-9150<br>Facsimile: (310) 201-9160<br><br>LAW OFFICES OF HOWARD G. SMITH<br>Howard G. Smith<br>3070 Bristol Pike, Suite 112<br>Bensalem PA 19020<br>Telephone: (215) 638-4847<br>Facsimile: (215) 638-4867<br><br>*Attorneys for Plaintiff* |

## SWORN CERTIFICATION OF PLAINTIFF

Stronghold Digital Mining, Inc., SECURITIES LITIGATION

I,    Mark Winter   , certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Stronghold Digital Mining, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Stronghold Digital Mining, Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ☐ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 4/10/2022

Signed: Mark Winter (DocuSigned by: BF4465B78DA241D...)

Mark Winter

**Mark Winter 's Transactions in Stronghold Digital Mining, Inc. (SDIG)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 11/12/2021 | Bought | 7 | $26.4630 |
| 12/15/2021 | Bought | 3 | $15.3400 |
| 12/17/2021 | Bought | 10 | $15.0000 |
| 12/28/2021 | Bought | 5 | $11.5900 |
| 3/30/2022 | Bought | 28 | $7.0299 |
| 3/31/2022 | Bought | 20 | $5.4699 |