

## The Rosen Law Firm
### INVESTOR COUNSEL

Phillip Kim, Esq.
pkim@rosenlegal.com

August 4, 2022

**VIA ECF**

Honorable Ronnie Abrams
United States District Judge
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

> **Re:**    *Winter v. Stronghold Digital Mining, Inc., et al.*
> <u>**No. 1:22-cv-03088-RA**</u>

Dear Your Honor:

Lead plaintiff movant Allegheny County Employees' Retirement System ("ACERS") submits this letter in opposition to Gulzar Ahmed's ("Ahmed") lead plaintiff motion. While Ahmed may claim larger losses, that alone is not enough to be appointed lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc) (providing that "the most adequate plaintiff [must satisfy] the [adequacy and typicality] requirements of Rule 23 of the Federal Rules of Civil Procedure."). Ahmed has failed to demonstrate his adequacy. Therefore, he is not the most adequate plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Ahmed has provided scant information about himself to establish that he can oversee this litigation and manage counsel. He states that he works as a station clerk for the Metropolitan Transportation Authority ("MTA") and that he has one year of investing experience. This is not enough information to demonstrate adequacy.

Courts in this and other jurisdictions have held that lead plaintiff movants must "provide enough information to make [that] preliminary showing [of adequacy]," *Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180 (LAP), 2019 WL 5587148, at *5 (S.D.N.Y. Oct. 30, 2019), adhered to on reconsideration, No. 19 Civ. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019); *Perez v. HEXO Corp.*, No. 19 Civ. 10965 (NRB), 2020 WL 905753, at *2 (S.D.N.Y. Feb. 25, 2020), reconsideration denied sub nom. *In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020). And in determining the adequacy of a lead plaintiff movant, Courts also regularly consider the legislative intent behind the PSLRA – particularly the preference for institutional investors to serve as lead plaintiffs and to avoid lawyer-driven litigation. *See In re Unumprovident Corp. Sec. Litig.*, No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633, at *16-17 (E.D. Tenn. Nov. 6, 2003) ("The legislative history of the PSLRA does demonstrate a strong congressional preference for institutional investors to serve as lead plaintiffs

1

in securities class actions. [. . .] The reasoning behind Congress' preference for institutional investors was based on an understanding of institutional investors and other large shareholders as better able to advance the interests of the class as a whole and effectively monitor the plaintiffs' attorneys."). Based on the statutory preference for institutional investors, courts have appointed institutions with smaller losses over individuals with bigger losses. *See, e.g.*, *Nakamura v. BRF S.A.*, No. 18-cv-2213 (PKC), 2018 WL 3217412, at *3-5 (S.D.N.Y. July 2, 2018) (denying group's motion and granting institution's motion despite fact that institution's loss was nearly $130,000 smaller than the group's loss); *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 853 (E.D. Pa. 2018) (finding institution was "more capable of representing the interests of the [class] members" even though competing individual investors claimed larger losses).

Additionally, in evaluating adequacy, courts also consider such factors as the "available resources and experience of the proposed lead plaintiff," *Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008), which serve as a proxy for the movant's financial and legal sophistication and, in turn, the likelihood that the movant will play a meaningful role in limiting the "lawyer-driven litigation that the PSLRA was designed to curtail," *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009). *See also*, *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001) (noting that the PSLRA sought to ensure that courts would appoint a lead plaintiff -- "frequently a large institution or otherwise sophisticated investor" -- who "would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation [is] delivered at a reasonable price").

For example, in *Pelletier*, a group of two individuals claimed a larger combined loss than an institutional investor. 316 F. Supp. 3d at 854. Recognizing that "the attorneys recruited [the individuals] as clients rather than the [individuals] selecting the attorneys," that the individuals "had no prior contact nor relationship with each other, and had no prior attorney-client relationship with its proposed lead counsel," and the individuals "do not have the sophistication or the involvement of the Fund," the court determined that the "scale tips in favor of the Fund." *Id.* at 854-55 (acknowledging that the "Fund is a sophisticated investor who has an ongoing relationship with its proposed lead counsel"). So too here. ACERS manages over a billion dollars in assets for its pensioners. Compared to Ahmed who has not demonstrated an ability to oversee counsel, ACERS has experience overseeing outside counsel, as well as a host investment managers and other professionals. ACERS is the prototypical lead plaintiff sought by the PSLRA as an institutional investor. In contrast, Ahmed has failed to demonstrate his adequacy in order to trigger the most adequate lead plaintiff presumption. The only information Ahmed has provided is that he works as a station clerk for the MTA and has only one year of investing experience. The scant information Ahmed submitted is insufficient to demonstrate his adequacy. [1]

---

[1] In *In re Boeing Company Aircraft Securities Litigation*, 2019 WL 6052399, at *5-8 (N.D. Ill. 2019), the court declined to appoint a family of movants with the largest loss because they did not explain their "ability to plunk down $40 million on a single stock" despite their insistence that they are "a family of modest means". Similarly, Ahmed's background does not match the reported financial interest. Ahmed attests that he is a station clerk for the MTA, but does not explain how he was able to invest over $200,000 in a single stock.

THE ROSEN LAW FIRM, P.A. ♦ 275 Madison Ave. 40th Fl. ♦ New York, NY 10016 ♦ TEL: 212.686.1060♦ FAX: 212-202-3827

The class would be better served to have ACERS appointed, with its years of experience overseeing counsel. ACERS respectfully requests that the court deny Ahmed's motion to be appointed lead plaintiff, and instead appoint ACERS as lead plaintiff.

We look forward to continuing to practice before this Court for many years to come.

Respectfully submitted,

/s/ *Phillip Kim*

Phillip Kim

cc:    All counsel of record (via ECF)