**THE ROSEN LAW FIRM, P.A.**
Jonathan Stern
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, NY 10006
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: jstern@rosenlegal.com
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff*
*the Allegheny County Employees'*
*Retirement System*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK WINTER, Individually and on Behalf of All Others Similarly Situated, <br><br>                   Plaintiff, <br><br> v. <br><br> STRONGHOLD DIGITAL MINING, INC., GREGORY A. BEARD, RICARDO R. A LARROUDÉ, WILLIAM B. SPENCE, B. RILEY SECURITIES, INC., COWEN AND COMPANY, LLC, TUDOR, PICKERING, HOLT & CO. SECURITIES, LLC, D.A. DAVIDSON & CO., COMPASS POINT RESEARCH & TRADING, LLC, and NORTHLAND SECURITIES, INC., <br><br>                   Defendants. | Case No. 1:22-cv-03088-RA <br><br> **MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ..................................................................................................................... 6

I.    Applicable Standards Favor Class Certification in this Securities Action ........................... 6

II.   The Requirements of Rule 23(a) are Satisfied .................................................................. 7

      A.   Numerosity is Established ........................................................................................ 7

      B.   Commonality is Established ..................................................................................... 8

      C.   Typicality is Established .......................................................................................... 9

      D.   Adequacy is Satisfied ............................................................................................. 10

III.  The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied ............. 11

      A.   Common Questions of Law and Fact Predominate as to the Claims ......................... 11

      B.   The Same Common Issues Predominate as to the Control Person Claims ................... 12

      C.   A Class Action is Superior to Other Methods of Adjudication ................................... 13

IV.   The Rosen Firm Should be Appointed Class Counsel under Rule 23(g) .......................... 14

CONCLUSION ................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Winsdor,*
 521 U.S. 591 (1997)...................................................................................... 2, 7, 11, 13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
 568 U.S. 455 (2013)................................................................................................... 2

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
 222 F.3d 52 (2d Cir. 2000)....................................................................................... 10

*Comcast Corp. v. Behrend,*
 569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)......................................... 14

*Consol. Rail Corp. v. Town of Hyde Park,*
 47 F.3d 473 (2d Cir. 1995)......................................................................................... 7

*Dodona I, LLC v. Goldman, Sachs & Co.,*
 296 F.R.D. 261 (S.D.N.Y. 2014) ............................................................................... 7

*Fogarazzao v. Lehman Bros.,*
 232 F.R.D. 176 (S.D.N.Y. 2005) ............................................................................... 8

*Green v. Wolf Corp.,*
 406 F.2d 291 (2d Cir. 1968)....................................................................................... 7

*Halliburton Co. v. Erica P. John Fund, Inc.,*
 573 U.S. 258 (2014)................................................................................................. 11

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.,*
 338 F.R.D. 205 (S.D.N.Y. 2021) ............................................................................. 12

*In re Alstom SA Sec. Litig.,*
 253 F.R.D. 266 (S.D.N.Y. 2008) ............................................................................... 8

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
 689 F.3d 229 (2d Cir. 2012)....................................................................................... 2

ii

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ................................................................................... 7, 14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ..................................................................................... 15

*In re IndyMac Mortg.-Backed Sec. Litig.*,
286 F.R.D. 226 (S.D.N.Y. 2012) ............................................................................... 11, 12

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ....................................................................................... 12

*In re Merk & Co., Inc. Sec. Deriv. & "ERISA" Litig.*,
2013 WL 396117 (D.N.J. Jan. 30, 2013) ........................................................................ 13

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
241 F.R.D. 435 (S.D.N.Y. 2007) .................................................................................... 13

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) .................................................................................... 13

*In re NTL, Inc. Sec. Litig.*,
2006 WL 330113 (S.D.N.Y. Feb. 14, 2006)..................................................................... 8

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ................................................................................... 7, 8

*In re Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016) .................................................................................... 14

*In re Petrobras,*
*Sec.*, 862 F.3d 250 (2d Cir. 2017) ................................................................................. 11

*In re Smart Techs., Inc. S'holder Litig.*,
295 F.R.D. 50 (S.D.N.Y. 2013) ...................................................................................... 12

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) .................................................................................... 12

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)............................................................................................ 14

*In re Winstar Commc'ns Sec. Litig.*,
290 F.R.D. 437 (S.D.N.Y. 2013) ...................................................................................... 8

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................................... 14

*Loritz v. Exide Techs.*,
  2015 WL 12488514 (C.D. Cal. Dec. 17, 2015) ....................................................... 13

*Morales v. Rochdale Vill., Inc.*,
  2018 WL 4522084 (E.D.N.Y. Aug. 1, 2018)............................................................. 8

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  2013 WL 6839093 (S.D.N.Y. Dec. 27, 2013) ......................................................... 15

*Pinter v. Dahl*,
  486 U.S. 622 ......................................................................................................... 15

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ........................................................................ 8, 12

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015).......................................................................... 14, 15

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)................................................................................... 9

*Rocco v. Nam Tai Elecs., Inc.*,
  245 F.R.D. 131 (S.D.N.Y. 2007) ........................................................................... 8

*Spagnola v. Chubb Corp.*,
  264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................................... 13

*Teachers' Ret. Sys. of La. v. ACLN Ltd.,*
  2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ........................................................ 9

*Trinidad v. Breakaway Courier Sys., Inc.*,
  2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ........................................................... 9

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8*,
  283 F.R.D. 199 (S.D.N.Y. 2012) ........................................................................... 7

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017)............................................................................... 7, 14

*Wallace v. IntraLinks*,
  302 F.R.D. 310 (S.D.N.Y. 2014) ........................................................................... 9

*Yi Xiang v. Inovalon Holdings, Inc.*,
  327 F.R.D. 510 (S.D.N.Y. 2018) ......................................................................... 12

**Statutes**

15 U.S. Code § 77k (e)........................................................................................... 15

15 U.S.C. §77l(a)(2).............................................................................................. 12

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 1, 2

  Fed. R. Civ. P. 23(a) ......................................................................................... 10

    Fed. R. Civ. P. 23(a)(1) ................................................................................. 2, 7

    Fed. R. Civ. P. 23(a)(2) .................................................................................... 8

      Fed. R. Civ. P. 23(a)(2)-(4) ............................................................................ 2

    Fed. R. Civ. P. 23(a)(3) ................................................................................ 9, 10

    Fed. R. Civ. P. 23(a)(4) ............................................................................... 2, 10

  Fed. R. Civ. P. 23(b) ......................................................................................... 12

    Fed. R. Civ. P. 23(b)(3) .................................................................... 3, 11, 13, 14

  Fed. R. Civ. P. 23(g) .......................................................................... 2, 15, 16

    Fed. R. Civ. P. 23(g)(1)(A) ............................................................................. 15

Lead Plaintiff Allegheny County Employees' Retirement System ("ACERS" or "Plaintiff") respectfully submits this memorandum of support of its motion pursuant to Rule 23 of the Federal Rule of Civil Procedure for: (1) certification of the Class consisting of: all persons and entities that purchased or otherwise acquired Stronghold Digital Mining, Inc. ("Stronghold" or the "Company") Class A common stock on or before December 20, 2021, pursuant and/or traceable to the Company's false and/or misleading Registration Statement[1] and related Prospectus[2] (the "Offering Materials") issued in connection with the Company's October 2021 Initial Public Offering (the "IPO" or "Offering"), and who were damaged thereby (the "Class");[3] (2) the appointment of ACERS as Class Representative of the Class; and (3) the appointment of The Rosen Law Firm, P.A. ("Rosen Law" or "Lead Counsel") as Counsel for the Class.[4]

**PRELIMINARY STATEMENT**

This securities action is a paradigmatic case for certification as a class action. Plaintiff asserts claims under Sections 11, 12, and 15 of the Securities Act of 1933 ("Securities Act") arising out of Defendants' common course of misconduct – namely, Defendants' issuance of materially

---

[1] "Registration Statement" refers to the final amended registration statement filed by Stronghold with the U.S. Securities and Exchange Commission ("SEC") on Form S-1/A on October 19, 2021 (Registration No. 333-258188), which was signed by each of the Individual Defendants (Defendants Gregory Beard, Ricardo Larroudé, and William Spence).

[2] "Prospectus" refers to the prospectus filed by Stronghold on Form 424B4 with the SEC on October 21, 2021 for the IPO (Registration No. 333-258188).

[3] Excluded from the Class are: (a) persons and entities who suffered no compensable losses; and (b) Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

[4] On January 19, 2024, Gulzar Ahmed's Motion to Withdraw as Co-Lead Plaintiff and for Levi & Korsinsky, LLP to Withdraw as Co-Lead Counsel, due to Ahmed's health, was granted. Dkt. No. 99; *see also* Dkt. Nos. 98, 98-1, 98-2, 98-3. As noted in the Court's order, ACERS and Rosen Law continue forward as Lead Plaintiff and Lead Counsel, respectively. *Id.*

false and misleading Offering Materials in connection with Stronghold's $132.5 million IPO. *See* Dkt. No. 51 ¶¶ 8-13, 99.

Both the Supreme Court and the Second Circuit have long held that securities cases are especially well-suited to class-wide adjudication, and that the class action mechanism is an important tool for enforcing securities laws. *See e.g.*, *Amchem Prods., Inc. v. Winsdor*, 521 U.S. 591, 625 (1997); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (noting that the predominance test of Rule 23 is "readily met" in cases alleging securities law violations).

Consistent with this precedent, certification is appropriate here as the proposed Class satisfies all of the requirements of certification under Fed. R. Civ. P. 23. Stronghold sold 7,690,400 shares of Class A common stock in the IPO which were traded on the NASDAQ Global Market ("NASDAQ") at all relevant times. *See* Dkt. No. 51 ¶¶ 8, 24, 99. As such, the proposed Class likely numbers in the thousands, satisfying Rule 23(a)(1)'s numerosity requirement.[5] The nature of the proposed Class Representative's injuries (a decline in the value of Stronghold shares) resulted from Defendants' common course of conduct (issuing a misleading registration statement) and is identical to that of members of the proposed Class such that the proposed Class Representative does not suffer from a conflict of interest that would impede the vigorous prosecution of this action, satisfying the commonality, typicality, and adequacy requirements of Rule 23(a)(2)-(4). Moreover, Rosen Law possesses the requisite experience and resources to successfully prosecute this matter as a class action, further supporting adequacy under Rule 23(a)(4), as well as the appointment of Rosen Law as Class Counsel under Rule 23(g).

---

[5] Plaintiffs conferred with Defendants who represented they do not dispute numerosity.

This action also satisfies Rule 23(b)(3)'s requirements of predominance and superiority. The core issue raised by Plaintiff's Securities Act claims is whether Stronghold's IPO Offering Materials contained misrepresentations. The answer to that central question will not vary from investor to investor.

Finally, a class action is the superior method of litigating this action because the costs of individual litigation and the resulting burden on the judicial system would be prohibitive if a myriad of individual suits were filed. Class adjudication allows all the claims to be heard in one court, and provides investors who suffered small losses the only realistic opportunity to pursue their claims given the costs of litigation.

In sum, for the reasons set forth herein, Plaintiff respectfully requests that its Motion for Class Certification be granted in its entirety.

**STATEMENT OF FACTS**

Stronghold purports to be a vertically-integrated cryptocurrency mining company focused on mining Bitcoin. *See* Dkt. No. 51 ¶¶ 24, 59. Stronghold owns and operates two power generation facilities—one located at 2151 Lisbon Road, Kennerdell, Pennsylvania (the "Scrubgrass Plant", "Scrubgrass Data Center", or simply "Scrubgrass") and one located at 1001 Industrial Road, Nesquehoning, Pennsylvania (the "Panther Creek Plant", "Panther Creek Data Center", or simply "Panther Creek"). *Id* at ¶¶ 24, 60-61.

Stronghold is organized under the laws of the State of Delaware and headquartered in New York, New York. *Id*. On October 20, 2021, Stronghold became a publicly traded company, completing its IPO on the NASDAQ. *Id*.

In violation of the Securities Act, the Offering Materials contained untrue statements of material fact and/or omitted to disclose material facts required to be stated therein. *Id*. at ¶¶ 9, 100-

3

01, 111. First, the Offering Materials were materially false and misleading in that they touted delivery schedules for the purchase of miners that Stronghold had contracted for with MinerVa Semiconductor Corp. ("MinerVa"), Stronghold's largest supplier of miners. Stronghold did not disclose that these delivery quantities and deadlines were unachievable—including the first scheduled delivery, which was scheduled for less than two weeks after the IPO. *Id*. at ¶¶ 10, 111, 114-115, 118, 121. Second, Stronghold made false and/or misleading statements in the Offering Materials as to the computing power, or "hash rate," the Company expected from each of the MinerVa MV7 miners it had purchased, as well as false and/or misleading statements regarding Stronghold's ability to reach a total hash rate of 2,100 petahash per second (PH/s) across the Company's entire mining operations by December 31, 2021. *Id*. at ¶¶ 11, 111, 114-115, 118, 120-121.

Stronghold's misrepresentations and omissions of then-present facts about the MinerVa MV7 miners also made it impossible for the Company achieve its target of generating a total combined hash rate of 2,100 PH/s across both of the Company's mining data centers by December 31, 2021. As the Company later revealed, Stronghold's fleet of miners had only reached a total combined hash rate of 800 PH/s by year-end 2021, less than 40% of the Company's stated expected hash rate for that timeframe. *Id*. at ¶ 12.

As a bitcoin mining company, Stronghold sets and reports goals for key industry metrics. The total hash rate capacity, which represents the combined computing power of the Bitcoin mining machines of a fleet of miners, is the most important metric used in the bitcoin mining industry because it allows companies to project the profitability of bitcoin mining operations. *Id*. at ¶ 65. As total hash rate capacity rises, so too does a mining fleet's ability to mine bitcoin and thus generate a profit from mining activities. *Id*.

4

Unbeknownst to the investing public, the facility where MinerVa assembled the MinerVa MV7 miners to be sent to Stronghold was the subject of power curtailments in the period leading up to the IPO. *Id*. at ¶ 69. As Stronghold would later acknowledge, prior to and at the time of the IPO, the power outages prevented the assembly and shipping of MinerVa MV7 miners to Stronghold, rendering it impossible to meet the delivery schedule represented in the Offering Materials. *Id*. Further compounding the problem, at the time of the IPO, MinerVa had not yet even sourced adequate component parts for any significant number of miners to be able to achieve the delivery schedule Stronghold touted to investors in the Offering Materials. *Id*. at ¶ 77. Moreover, the fact that the remaining 20% payment for the MinerVa miners had not yet been made by Stronghold as of the October 21, 2021 Prospectus filing, despite the fact that that payment was due "one month before the shipping date," demonstrates it was knowable by Defendants at the time of the IPO that MinerVa would not meet the schedule set forth in the Offering Materials, which called for deliveries to arrive by October 31, 2021. *Id*. at ¶ 78. In addition, according to the Offering Materials, shipping costs under the Company's purchase agreement with MinerVa were the responsibility of the Company and shall be determined at the time the miners are ready for shipment. *Id*. at ¶ 80. Moreover, the operational performance of the MinerVa MV7 miners that Stronghold did eventually receive was extremely poor. *Id*. at ¶ 81.

Unbeknownst to investors, however, Stronghold misrepresented the hash rate capacity of the individual MinerVA MV7 miners, and Stronghold additionally misrepresented its ability to reach a total hash rate of 2,100 PH/s by December 2021. *Id*. at ¶¶ 83-96.

On March 29, 2022, after the NASDAQ market closed, Stronghold announced its fourth quarter and full year 2021 financial results for the year ending December 31, 2021. The Company reported a net loss of $0.52 per share for the quarter, well below analyst estimates of $0.04 net

earnings per share. *Id*. at ¶ 14. Stronghold's Chief Executive Officer acknowledged that "MinerVa['s] deliveries have been well short of the timelines in the contract" as "to-date we have only received approximately 3,300 out of the 15,000 miners originally ordered from MinerVa that were scheduled for delivery by December, as they have continually fallen short of contractual and communicated delivery timelines." *Id*. Stronghold also revealed that it cannot "provide an update or a timeline on future deliveries, or if the Company can expect any future deliveries" of the MinerVa miners. *Id*. Stronghold later disclosed that, by March 31, 2022, the Company had recognized an impairment totaling $12,228,742 on the remaining miners it had not received from MinerVa. *Id*.

The next day, March 30, 2022, the Company's stock price fell as much as $3.28 per share, or 32%, to close at $6.97 per share, on trading volume of 6,192,200 shares, almost ten times the trading volume of 632,200 shares traded on March 28, 2022. *Id*. at ¶ 14.

Since the commencement of this action, Stronghold stock has traded as low as $3.46 per share, a more than 80% decline from the $19.00 per share IPO price. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**ARGUMENT**

**I.    Applicable Standards Favor Class Certification in this Securities Action**

Securities cases such as this one are ideally suited for class certification because of the predominance of common issues of fact and the impracticability of bringing individual actions to redress a common wrong. Indeed, the Supreme Court has repeatedly recognized that "[P]redominance is a test readily met in certain cases alleging" violations of the federal securities

6

laws. *Amchem,* 521 U.S. at 625.[6]

"The Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and, in cases such as this that involve alleged manipulations of public markets, to maximize the benefit to the public provided by class actions." *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 266 (S.D.N.Y. 2014); *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action[.]").[7]

To be certified, a proposed class must satisfy the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy – as well as one of the three provisions in Rule 23(b). *E.g. Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017). As discussed below, each of these requirements are met in this case.

## II.    The Requirements of Rule 23(a) are Satisfied

### A.    Numerosity is Established

Rule 23(a)(1) is satisfied when a class is "so numerous that a joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "[n]umerosity is presumed when a class consists of forty members or more." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Precise quantification of the proposed class is not necessary because the court may "make common sense assumptions" and may rely on reasonable inferences drawn from the available facts

---

[6] Unless otherwise noted, internal quotations and citations are omitted and emphasis is added throughout.

[7] *See also Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 206 (S.D.N.Y. 2012) ("violations of the securities laws, especially those brought under Sections 11, 12(a)(2) and 15 of the Securities Act, are "especially amenable" to class action certification and resolution."); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("Class treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws.").

to estimate the size of the class. *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 134–35 (S.D.N.Y. 2007); *see also Morales v. Rochdale Vill., Inc.*, 2018 WL 4522084, at *9 (E.D.N.Y. Aug. 1, 2018), *report and recommendation adopted,* 2018 WL 4697271 (E.D.N.Y. Sept. 28, 2018).

Indeed, in securities actions "relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 275 (S.D.N.Y. 2008).

Here, 7,690,400 Stronghold Class A common stock shares were sold in the IPO to geographically dispersed investors likely numbering in the thousands, satisfying numerosity for the Class. *See* Dkt. No. 51 ¶ 8. Moreover, Defendants agree that numerosity is satisfied.

### B.    Commonality is Established

Rule 23(a)(2) is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement "has been characterized as a 'low hurdle.'" *In re NTL, Inc. Sec. Litig.,* 2006 WL 330113, at *6 (S.D.N.Y. Feb. 14, 2006). "Even a single common legal or factual question will suffice." *NYSE Specialists,* 260 F.R.D. at 70. "In general, where putative class members have been injured by similar material misrepresentations and omission, the commonality requirement is satisfied." *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).[8] Here, the Complaint identifies numerous common issues of fact and law, all of which are amenable to class-wide proof, including but not limited to the following:

- whether the Defendants violated the Securities Act;

---

[8] *Accord In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 443 (S.D.N.Y. 2013) (same); *see also Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) ("[C]ourts in this Circuit have held that the … commonality requirement is plainly satisfied where the alleged misrepresentations … relate to all the investors, [as the] existence and materiality of such misrepresentations obviously present important common issues.").

- whether statements made by Defendants to the investing public in the Offering Materials were false and/or misrepresented or omitted material facts;

- whether certain defendants have a viable "due diligence" defense to the strict liability imposed by Section 11 of the Securities Act;

- whether the Underwriter Defendants are "statutory sellers" and whether sales were made "by means of a prospectus or oral communication";

- whether the Individual Defendants are control persons of Stronghold for purposes of Section 15 of Exchange Act; and

- to what extent members of the Class have sustained damages, and if so, the proper measure of damages.

*See* Dkt. No. 51 ¶ 158. Given the numerous common questions of fact and law present in this case, the commonality requirement is established.

### C.    Typicality is Established

Rule 23(a)(3) is satisfied when the claims of the class representatives are "typical" of those of the class. As with commonality, the test for typicality "is not demanding." *Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). Thus, typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007); *see also Teachers' Ret. Sys. of La. v. ACLN Ltd.,* 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004) ("When inquiring into the typicality

requirement under Rule 23(a)(3), the focus must be on the defendants' behavior and not that of the plaintiffs.").

Here, Plaintiff's claims and legal theories are typical of the Class. ACERS purchased Stronghold Class A common stock in and traceable to the IPO, including on the IPO date at the IPO price from an underwriter. *See* Declaration of Jonathan Stern ("Stern Decl."), ¶4. As with other members of the Class, Plaintiff's claims are based on the Offering Materials' misrepresentations and omissions concerning the purchase and delivery of miners and also the hash rate the Company would achieve from the MinerVa miners and overall. Dkt. No. 51 at ¶¶ 11, 111, 114-115, 118, 120-121.

### D.      Adequacy is Satisfied

The final requirement of Rule 23(a) is that "the class representatives … fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the lead plaintiff's counsel must be "qualified, experienced, and generally able to conduct the proposed litigation," and the class representatives must not have interests conflicting with the class. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

The interests of the proposed Class Representative are aligned with those of the Class. The proposed Class Representative's claims are predicated upon the same misconduct that gives rise to the claims of the Class. The proposed Class Representative has actively participated in this action by, among other things, communicating by phone and email with Lead Counsel, monitoring the progress and status of the case, and reviewing key documents filed in the action. Stern Decl., Ex. 1 (Declaration of ACERS). In addition, ACERS has attested to its understanding of its duty, as a Class Representative, to act in the interests of all other investors who are members of the Class. *Id.*

10

Moreover, Plaintiff has retained counsel which is qualified, experienced, and able to conduct the proposed litigation. *See* Stern Decl., Ex. 2 (firm resume of the Rosen Firm). The Rosen Firm has vigorously pursued the Class' interests and advanced their claims in this Court, including the filing of comprehensive pleadings and defeating Defendants' motion to dismiss. In short, the adequacy requirement has been met because Plaintiff's interests are not antagonistic of the Class, and Lead Counsel is well-qualified and has demonstrated its competence prosecuting this action.

**III.    The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied**

The predominance requirement is satisfied if: "(1) resolution of any material legal or factual questions … can be achieved through generalized proof, and (2) these [common] issues are more substantial than the issues subject to only individualized proof." *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017). "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem,* 521 U.S. at 625. "That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttals does not cause individual questions to predominate." *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 276 (2014) ("*Halliburton II*"). Here, issues of both law and fact predominate over any individual issues.

**A.    Common Questions of Law and Fact Predominate as to the Claims**

Plaintiff's claims do not include the elements of scienter, reliance, or loss causation. *See In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 236–37 (S.D.N.Y. 2012) (providing elements of Securities Act claims). Instead, analysis of the claims will focus on the existence and materiality of the misrepresentations in the Offering Materials, which are issues susceptible to the generalized proof. *See id.* at 241 (noting that materiality is gauged according to an objective standard). Courts in this circuit routinely find that, given the elements of Section 11, predominance

11

is readily satisfied. In a Section 11 claim, "the two major issues regarding Defendants' liability will be whether there were any misrepresentations or omissions in [the] Registration Statement and whether any such misrepresentations or omissions were material. These are issues that require only generalized proof." *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 214 (S.D.N.Y. 2021); *see also Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 529 (S.D.N.Y. 2018) *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 92 (S.D.N.Y. 2007), *adhered to on reconsideration*, 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007). The factual and legal inquiries central to Plaintiff's claims are common to all Class members and "each proposed class member's claims will rise or fall on common proof related to the offering documents." *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 142–43 (S.D.N.Y. 2019). Additionally, damages for Securities Act claims are "based on a statutory formula" common to all Class members. *IndyMac,* 286 F.R.D. at 235. The claims here raise questions common to the Class and will be answered with common proof; accordingly, the claims here satisfy the predominance requirement of Rule 23(b).

This analysis applies equally to Plaintiffs' Section 12 claims, which add two more elements that are also subject to class-wide proof, to wit, whether the Underwriter Defendants are "statutory sellers" and whether sales were made "by means of a prospectus or oral communication." 15 U.S.C. §77l(a)(2). Thus, with respect investors who were direct purchasers in the IPO, like ACERS, common issues predominate in the proof of the Section 12 claim. *See In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 62 (S.D.N.Y. 2013) (certifying Section 12 class of purchasers); *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 121 (S.D.N.Y. 2011) (same).

**B.       The Same Common Issues Predominate as to the Control Person Claims**

12

Finally, Section 15 liability arises where one controls a Section 11 or 12 violator. Whether the Individual Defendants exercised control over Stronghold under Section 15 of the Securities Act "constitute a common question for all class members because if Plaintiffs are able to prove a primary violation, the controlling person inquiry would not be specific to individual class members." *Loritz v. Exide Techs.,* 2015 WL 12488514, at *5 (C.D. Cal. Dec. 17, 2015); *see also In re Merk & Co., Inc. Sec. Deriv. & "ERISA" Litig.,* 2013 WL 396117, at *13 (D.N.J. Jan. 30, 2013) (finding that the same predominance analysis applies to the control person claims as for the primary violation).

### C. A Class Action is Superior to Other Methods of Adjudication

Under Rule 23(b)(3), "[s]uperiority is established when 'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 435, 449 (S.D.N.Y. 2007) (quoting *Amchem,* 521 U.S. at 615). Superiority is typically found in cases in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually. *See Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 99 (S.D.N.Y. 2010). "Securities suits easily satisfy" this requirement "because the alternatives are either no recourse for thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015) (cleaned up).

The number of relevant documents is voluminous, it would be prohibitively difficult and expensive to prosecute this action on an individual basis. The misconduct here, like "[m]ost violations of the federal securities laws, … inflict[ed] economic injury on large numbers of

13

geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible." *In re Blech Securities Litigation*, 187 F.R.D. at 107; *see also In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003) (finding superiority requirement met when "[f]ew individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden such litigation would entail."). Finally, securities class actions like this one generally raise no unusual manageability issues. *See e.g., In re Petrobras Sec. Litig.,* 312 F.R.D. 354, 363-64 (S.D.N.Y. 2016) (citing *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 140 (2d Cir. 2001)). Thus, a class action is the superior method for resolving the claims here.

**IV.    Classwide Per Share Damages are Calculated Pursuant to the Securities Act**

Because the Securities Act specifically provides a statutory damages formula for violations of Sections 11 and 12(a)(2), the strictures of *Comcast*[9] do not apply here. Moreover, Comcast does not condition certification upon evidence of an acceptable class wide damages model. *Comcast* "held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." *Waggoner v. Barclays PLC,* 875 F.3d 79, 106 (2d Cir. 2017) (*quoting Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)). In *Comcast* the Court rejected certification of an antitrust class because the damages model relied on calculated damages that flowed from four theories of antitrust impact, three of which were already rejected by the Court. *Comcast*, 133 S. Ct. 1426, 1434, 185 L. Ed. 2d 515 (2013). For that reason, there was a mismatch between the method of the class wide damages calculation, and the theory of class-wide proof. *Id.* Importantly, "*Comcast* does not mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of

---

[9] *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).

measurement on a classwide basis." *Roach*, 778 F.3d at 402.

Multiple courts in this District have held that *Comcast* is inapplicable to cases arising under Sections 11 and 12(a)(2) because the Securities Act provides a specific statutory damages formula for violations. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 350 (S.D.N.Y. 2015) (finding *Comcast* inapplicable to action brought under Sections 11, 12(a)(2), and 15 of the Securities Act); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 2013 WL 6839093, at *5 (S.D.N.Y. Dec. 27, 2013) (same). Section 11 of the Securities Act provides the following formula for calculating damages:

> The suit authorized under subsection (a) may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.

15 U.S. Code § 77k (e).

Section 12(a)(2) of the Securities Act provides a statutory remedy permitting purchasers of securities "to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." The Supreme Court has noted that in the case of damages, courts are to apply the same rescissory damages formula. *Pinter v. Dahl*, 486 U.S. 622, 641, n. 18, 108 S. Ct. 2063, 2075, 100 L. Ed. 2d 658 (1988).

### V.      The Rosen Firm Should be Appointed Class Counsel under Rule 23(g)

Rule 23(g)(1)(A) sets forth the factors to consider in appointing Class Counsel, including: (i) the work counsel has done in identifying or investigating claims in this action; (ii) counsel's

15

experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to the case. Under these criteria, Lead Counsel—Rosen Law—is eminently qualified. Rosen Law has extensive experience litigating securities class actions under federal securities laws, and has recognized expertise and success prosecuting securities class actions. *See* Stern Decl., Ex. 2. In sum, Plaintiff respectfully submits that the requirements of Rule 23(g) are met, and thus request that the Court approve the Rosen Firm as Class Counsel.

<u>**CONCLUSION**</u>

For the reasons stated herein and in the accompanying supporting exhibits, Plaintiff respectfully requests that the Court issue an order: (i) certifying this action as a class action and certifying the Class as defined herein; (ii) appointing ACERS as Class Representative; and (iii) appointing The Rosen Law Firm, P.A. as Class Counsel.

Dated: February 19, 2024                    Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            By: /s/ *Jonathan Stern*
                                            Jonathan Stern
                                            Laurence M. Rosen
                                            275 Madison Avenue, 40th Floor
                                            New York, NY 10006
                                            Tel: (212) 686-1060
                                            Fax: (212) 202-3827
                                            Email: jstern@rosenlegal.com
                                            Email: lrosen@rosenlegal.com

                                            *Lead Counsel for Lead Plaintiff*
                                            *the Allegheny County Employees'*
                                            *Retirement System*

16