**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARK WINTER, Individually and on Behalf of All
Others Similarly Situated,

                               Plaintiff,

v.

STRONGHOLD DIGITAL MINING, INC.,
GREGORY A. BEARD, RICARDO R. A
LARROUDÉ, WILLIAM B. SPENCE, B. RILEY
SECURITIES, INC., COWEN AND COMPANY,
LLC, TUDOR, PICKERING, HOLT & CO.
SECURITIES, LLC, D.A. DAVIDSON & CO.,
COMPASS POINT RESEARCH & TRADING, LLC,
and NORTHLAND SECURITIES, INC.,

                               Defendants.

Case No. 1:22-cv-03088-RA

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 2

I.      Procedural History............................................................................................... 2

II.     Discovery and Class Certification ..................................................................... 4

III.    Negotiation of the Settlement and the Terms of the Proposed Settlement ................. 5

ARGUMENT.......................................................................................................................... 6

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS
        WARRANTED ...................................................................................................... 6

        A.      Standards for Preliminary Approval of a Proposed Class Action
                Settlement .................................................................................................. 6

        B.      Rule 23(e)(2)(A): Adequate Representation ........................................... 7

        C.      Rule 23(e)(2)(B): The Settlement is the Product of Good Faith,
                Informed, and Arm's-Length Negotiations by Experienced Counsel.............. 8

        D.      Rule 23(e)(2)(C): The Settlement Provides Significant and Certain
                Benefits..................................................................................................... 10

                1.      Despite Strong Claims, Many Risks to Recovery Remained .............. 10

                2.      The Effective Process for Distributing Relief to the Settlement
                        Class ........................................................................................... 11

                3.      The Settlement Does Not Excessively Compensate Lead
                        Counsel........................................................................................ 12

        E.      Rule 23(e)(2)(D): Settlement Class Members Are Treated
                Equitably Relative to One Another ...................................................... 13

        F.      The Remaining *Grinnell* Factors Support Preliminary Approval ................. 14

II.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED
        FOR SETTLEMENT PURPOSES.................................................................... 15

        A.      Numerosity.............................................................................................. 16

        B.      Commonality ........................................................................................... 17

        C.      Typicality ................................................................................................ 17

    D.      **Adequacy** ........................................................................................................ **18**

           1.      **Adequacy of the Proposed Class Representative** .................................. **18**

           2.      **Rule 23(g) Adequacy of the Proposed Class Counsel** .......................... **18**

    E.      **Common Questions Predominate, and the Class Is Superior to Other Methods of Adjudication** ......................................................................... **20**

**III.**    **THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED** ..................... **21**

**IV.**    **PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS** ..................... **23**

**CONCLUSION** ............................................................................................................ **24**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
    No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .............................. 20

*Amchem Prods., Inc., v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................... 16, 20

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ............................................................................................. 17

*Christine Asia Co. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................... 13, 19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................................... 7, 14, 15

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ................................................................................................. 8

*Fogarazzao v. Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ...................................................................................... 19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................. 10, 22

*In re Akazoo S.A. Sec. Litig.*,
    2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) ................................................................... 12

*In Re AKAZOO S.A. SECURITIES LITIGATION.*,
    2021 WL 4523811 ............................................................................................................ 12

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) .............................................................................. 14

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    No. 17-CV-04846-NGG-PK, 2021 WL 345790 (E.D.N.Y. Feb. 1, 2021) .............................. 23

*In re China Sunergy Sec. Litig.*,
    No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................. 15

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) ............................................................................................. 18

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................. 17, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................. 14

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) ................................................................................ 19

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................... 17

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................... 14

*In re Indep. Energy Holdings PLC*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................................... 9

*In re Lyft Inc. Sec. Litig.*,
2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ............................................................... 9

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................. 21

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................... 13

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................................................................... 15

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................. 8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................... 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................. 7

*In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38 (S.D.N.Y. 2012) ...................................................... 17

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................. 18

*In re Revolution Lighting Techs., Inc. Sec. Litig.*,
No. 1:19-CV-00980-JPO, 2020 WL 4596811 (S.D.N.Y. Aug. 11, 2020) ............................. 12

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................................... 10

*In re Twinlab Corp. Sec. Litig.*,
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ......................................................................... 17

*In re Veeco Instruments Inc. Sec. Litig.*,
　2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............................................................... 9

*Irene KRISTAL, Individually and on behalf of all others similarly situated, Plaintiff, v.
　MESOBLAST LIMITED, Silviu Itescu, Josh Muntner, and Fred Grossman, Def*endants.,
　2022 WL 4371039 ...................................................................................................... 12

*Karvaly v. eBay, Inc.*,
　245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................................. 16

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
　136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..................................................................... 19

*Kristal v. Mesoblast Ltd.*,
　2022 WL 3442535 (S.D.N.Y. Aug. 15, 2022) ........................................................... 12

*Marisol A. by Forbes v. Giuliani*,
　929 F. Supp. 662 (S.D.N.Y. 1996) ............................................................................ 17

*Moses v. New York Times Co.*,
　79 F.4th 235 (2d Cir. 2023) ............................................................................... 6, 7, 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
　339 U.S. 306 (1950) ................................................................................................... 21

*Phillips Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985) ................................................................................................... 21

*Robidoux v. Celani*,
　987 F.2d 931 (2d Cir. 1993) ...................................................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　396 F.3d 96 (2d Cir. 2005) .................................................................................... 6, 21

*Weinberger v. Kendrick*,
　698 F.2d 61 (2d Cir. 1982) ........................................................................................ 16

*Yang v. Focus Media Holding Ltd.*,
　2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .............................................................. 6

**Statutes**

15 U.S.C. § 78u-4(a)(4) .................................................................................................. 13

15 U.S.C. §77z-1(a)(7)(A)-(F) ....................................................................................... 22

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... passim

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986).. 20

**PRELIMINARY STATEMENT**

Plaintiff[1], behalf of itself and all other members of the Settlement Class,[2] submits this memorandum of law in support of its unopposed motion for preliminary approval of the proposed settlement in the above-captioned class action (the "Action"). The Settlement provides a recovery of four million seven hundred and fifty thousand ($4.75 million) in cash and the US dollar value of 25 Bitcoins, currently valued at $76,166.7986 per Bitcoin[3], to resolve this securities class action brought against the Settling Defendants.[4] The terms of the proposed settlement are set forth in the Stipulation.

Plaintiff submits that the Settlement warrants preliminary approval by the Court. The Settlement it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected mediator, represents a favorable recovery that falls well within the range of possible approval, and is likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e). Through the Court's grant of preliminary approval, Plaintiff will be able to provide notice of the Settlement's terms and conditions to potential Settlement Class Members. A final approval hearing (the "Settlement Hearing") will be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against the Settlement, and the Court will then make

---

[1] Plaintiff refers to Court-appointed Lead Plaintiff Allegheny County Employees Retirement System.

[2] All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated November 6, 2024 (the "Stipulation").

[3] Based on the price of Bitcoin according to the NASDAQ Bitcoin Reference Price Index on November 6, 2024. https://indexes.nasdaqomx.com/Index/History/NQBTCS.

[4] The Settling Defendants include, Stronghold Digital Mining, Inc. ("Stronghold" or the "Company"), Gregory A. Beard, William B. Spence (together with Stronghold, the "Stronghold Defendants"), B. Riley Securities, Inc., Cowen and Company, LLC, Tudor, Pickering, Holt & Co. Securities, LLC, D.A. Davidson & Co., Compass Point Research & Trading, LLC, and Northland Securities, Inc. (collectively, the "Underwriter Defendants"), and Ricardo R. A. Larroudé, (together with the Underwriter and Stronghold Defendants, the "Settling Defendants").

1

a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Plaintiff's Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order has been negotiated by the Parties and will: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) preliminarily certify the Settlement Class and appoint Plaintiff as Class Representative and Lead Counsel as Class Counsel, for purposes of the Settlement only; (iii) approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Claim Form"), Summary Notice, and Postcard Notice attached as Exhibits 1, 2, 3 and 4 to the Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Plaintiff's Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Plaintiff pursuant to the PSLRA; and (vi) appoint Strategic Claims Services ("SCS") to administer the Settlement process.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.    **Procedural History**

On April 14, 2022, the Action was commenced in the Southern District of New York on behalf of Stronghold investors alleging violations of the violations of Section 11 and 15 of the Securities Act of 1933 ("Securities Act") relating to Stronghold's October 21, 2021 Initial Public Offering ("IPO"). Dkt. No. 1. After the filing of competing lead plaintiff motions, on August 4,

2

2022, pursuant to the PSLRA, the Court appointed Plaintiff and Gulzar Ahmed as Co-Lead Plaintiffs, ("Co-Lead Plaintiffs") and accordingly, appointed The Rosen Law Firm, P.A. and Levi & Korsinsky, LLP as Co-Lead Counsel. Dkt. No. 41.

Co-Lead Plaintiffs engaged in a thorough investigation for the purpose of drafting a comprehensive amended complaint, which included the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, Stronghold earnings call transcripts, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses. Additionally, Plaintiff retained private investigators as well and engaged and consulted with an economics expert on damages and causation issues.

On October 18, 2022, Co-Lead Plaintiffs filed their Amended Complaint (the "Amended Complaint") asserting claims against Defendants under Sections 11, 12(a)(2), and 15 of the Securities Act. Dkt. No. 51. The Complaint asserts that in the Offering Documents for the IPO, Defendants (i) false and/or misleading statements in the Offering Documents regarding the stated delivery schedule for the Company's much touted agreements with Bitcoin miner suppliers, including MinerVa Semiconductor Corp.; (ii) made false and/or misleading statements in the Offering Documents as to the computing power the Company expected from the miners it had purchased; and (iii) false and/or misleading statements regarding Stronghold's ability to reach a their claimed computing power across the Company's entire mining operations by December 31, 2021. The Complaint alleges that at the time this Action was filed, Stronghold stock was trading as low as $4.78 per share, a 75% decline from the $19 per share IPO price.

On December 19, 2022 the Stronghold Defendants filed a Motion to Dismiss Co-Lead Plaintiffs' Amended Complaint ("Stronghold MTD"). This motion was joined by Defendant Ricardo R. A. Larroudé, on December 19, 2022, Dkt. No. 57, and was fully briefed by March 20, 2023. Dkt. Nos. Dkt. No. 54. (Stronghold MTD), 65 (Co-Lead Plaintiffs' Opposition), and 70 (Stronghold Defendants' Reply). At the same time, the Underwriter Defendants filed a separate Motion to Dismiss Co-Lead Plaintiffs' Amended Complaint ("Underwriter MTD"), which was fully briefed on March 20, 2023. Dkt. Nos. 58 (Underwriter MTD), 67 (Co-Lead Plaintiffs' Opposition), and 71 (Underwriter Defendants' Reply).

On August 10, 2023, the Court granted in part and denied in part both the Underwriter MTD, and Stronghold MTD, upholding Co-Lead Plaintiffs Section 11, 15, and Plaintiff's Section 12(a)(2) claim but denying Plaintiff Ahmed's Section 12(a)(2) claim. Dkt. No. 77.

Settling Defendants filed their answers on October 9, 2023. Dkt. Nos. 89 (Answer of Stronghold Defendants), 90 (Answer of Ricardo Larroudé), and 91 (Answer of Underwriting Defendants.).

## II.     Discovery and Class Certification

In connection with formal discovery and Co-Lead Plaintiffs' Motion for Class Certification, on September 8, 2023, the Court entered the Case Management Plan and Scheduling Order with all discover to be completed by April 21, 2025. Dkt. No. 87.

In the Case Management Plan and Scheduling Order the Court further ordered that Co-Lead Plaintiffs' Motion for Class Certification was to be filed no later than February 19, 2024, that Defendants' Opposition to Certification was due no later than June 10, 2024, and Co-Lead Plaintiffs' Reply was due no later than August 19, 2024. *Id*.

On January 16, 2024, Gulzar Ahmed filed a motion to withdraw as co-lead plaintiff due to personal health issues. Dkt. No. 98.  The Court granted the motion to withdraw on January 19,

2024, leaving Plaintiff as the sole Lead Plaintiff in the action. Dkt. No. 99.

On February 19, 2024, Plaintiff moved for class certification and Appointment of Class Representative and Class Counsel. Dkt. No. 100. The class certification motion was assigned to Magistrate Judge Gary Stein for a report and recommendation Dkt. No. 103.

**III.    Negotiation of the Settlement and the Terms of the Proposed Settlement**

In June 2024, counsel for the parties agreed to explore resolution of the Action, retaining Greg Danilow of Phillips ADR ("Mr. Danilow") to serve as mediator in the Action. Mr. Danilow is a well-respected mediator with substantial experience in securities class actions.

In advance of the mediation, Plaintiff, and Settling Defendants exchanged detailed mediation statements that highlighted their respective best facts and arguments and addressed both liability and damages issues. On July 18, 2024, counsel for Plaintiff and Settling Defendants participated in a full-day mediation session in person before Mr. Danilow and reached an agreement in principle. The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement, including a payment on behalf of the Settling Defendants of four million seven hundred and fifty thousand ($4.75 million) in cash and the US dollar value of 25 Bitcoins, with the Bitcoin portion of the settlement paid according to the following schedule: the dollar value of one Bitcoin paid on the third business day of the month following preliminary approval, one bitcoin per month on the third business day of the month for 22 months, and 2 bitcoins paid on the third business day of the 24th month.

5

## ARGUMENT

### I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

#### A.    Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of litigation. *See Yang v. Focus Media Holding Ltd.,* 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements[.]"[5] This is especially so in securities class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."). Fed. R. Civ. P. 23(e) specifies that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement, after considering "the four factors outlined in Rule 23(e)(2) holistically." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *see also* Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

(A)    class representatives and counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[5] All internal quotations and citations are omitted, unless otherwise noted.

(iii)    the terms of any proposed award of attorney's fees, including timing of
payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, courts in the Second Circuit may also consider the factors

enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), many of which

overlap with the Rule 23(e) factors. *See Moses*, 79 F.4th 235 ("Rule 23(e)(2) does not displace our

traditional *Grinnell* factors, which remain a useful framework for considering the substantive

fairness of a settlement.").[6] The proposed Settlement here readily satisfies all these factors and

should be preliminarily approved. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc.*

*Antitrust Litig.*, 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

**B.     Rule 23(e)(2)(A): Adequate Representation**

Plaintiff and Lead Counsel have adequately prosecuted this Action on behalf of the class

since its inception and will continue to do so throughout the administration of the Settlement to

secure and deliver its benefits. As demonstrated in its declaration in support of the Class

Certification Motion filed on February 19, 2024, Plaintiff was an active and informed participant

in the litigation, regularly communicating with its counsel and reviewing significant pleadings and

---

[6] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors that are not duplicative of Rule 23(e)(2) are (2), (3), (7), (8) and (9).

orders, as well as supervising discovery and settlement efforts. Dkt. No. 102-1. Faithfully executing its duty, Plaintiff was engaged in each step of the litigation.

Likewise, Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company; (ii) engaging a damages and causation expert; (iii) defeating, in part, the Underwriter and Stronghold MTDs; (iv) commencing in discovery, including the review of more than 10,000 pages of documents; (v) preparing the Class Certification Motion; (vi) engaging in arm's-length negotiations between experienced counsel with the assistance of a well-respected Mediator. The adequacy of Plaintiff's and Lead Counsel's representation is clearly demonstrated through their persistent and vigorous negotiations with the Settling Defendants over months while diligently prosecuting the Action. Given the challenging circumstances where ongoing litigation was depleting the funds available for the Settlement Class to recover their damages, Plaintiff and Lead Counsel secured a favorable settlement which provides a guaranteed, immediate recovery to the Settlement Class. Accordingly, the Settlement Class has been, and remains, well represented.

### C.    Rule 23(e)(2)(B): The Settlement is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Moses*, 79 F.4th at 243 (arm's-length negotiations support approval, though they do not give rise to a presumption of fairness); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[M]ediator's involvement in ... settlement negotiations helps to

8

ensure that the proceedings were free of collusion and undue pressure.").

The Settlement was achieved thorough arm's-length negotiations, which included a full-day mediation session in July 2024, resulting in an. *See In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at \*10 (N.D. Cal. Aug. 7, 2023) (approving settlement and noting mediator involvement as a third-party neutral). "[T]hat the Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable." *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at \*4 (S.D.N.Y. Sept. 29, 2003). The July 2024 mediation session was preceded by the exchange of detailed mediation statements that addressed liability and damages issues, as well as production of targeted discovery by Defendants. At all times, the discussions were between well-informed and experienced counsel on both sides.[7] *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel[.]"). Here, Plaintiff is represented by experienced and skilled firms in securities class litigation. *See* Dkt. No. 19-4.

Second, Plaintiff and Lead Counsel only agreed to settle the claims after a rigorous factual investigation and consultation with experts, and after testing the claims and defenses at issue through a mediation process including the exchange of mediation statements. Plaintiff and the Settling Defendants engaged Mr. Danilow who oversaw an in-person mediation session.

Finally, the Settlement was also negotiated with the oversight of Plaintiff, who is a sophisticated institutional investor which recommended that the Settlement be approved. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at \*5 (S.D.N.Y. Nov. 7, 2007).

---

[7] During the course of the litigation, Settling Defendants' Counsel included Faegre Drinker Biddle & Reath LLP, Willkie Farr & Gallagher LLP, Vinson & Elkins LLP, and Tannenbaum Helpern Syracuse & Hirschtritt LLP.

9

**D.**      <u>**Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits**</u>

**1.      Despite Strong Claims, Many Risks to Recovery Remained**

To determine whether the proposed Settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. Although Plaintiff and Lead Counsel believe the claims to be strong, they acknowledge that Defendants could advance several substantial arguments which could have reduced, or altogether eliminated any recovery for Stronghold investors. It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that [s]ecurities class actions are generally complex and expensive to prosecute.").

Protracted litigation posed several risks for Stronghold investors. First, although the Court denied the Motion to Dismiss against Plaintiff, Plaintiff would have faced significant hurdles in connection with ultimately proving falsity and materiality which is necessary for its Securities Act claims. Moreover, Plaintiff would have to succeed on its pending Class Certification Motion and anticipated summary judgment motions. Indeed, Settling Defendants have not yet submitted their opposition to Plaintiff's Class Certification Motion.

Furthermore, even if Plaintiff overcomes the hurdles to establishing liability and to recover funds from Settling Defendants, Plaintiff would have to convince a jury to accept their damages calculation. Plaintiff's expert estimated that maximum damages are approximately $97 million. However, this "best case" scenario is subject to attack if Defendants were able to disaggregate other confounding factors which may have impacted the stock declines or establish a negative causation defense. In their Motions to Dismiss, Settling Defendants argue that before any alleged misrepresentation was revealed to the market, Stronghold's stock price had already dropped nearly

**50%** from its $19.00 IPO price due to reasons unrelated to this Action. In continuing to argue that Plaintiff was not damaged at all by the alleged misstatements, Defendants would point to the fact that there was as increase in price two days after the initial November 30, 2021 disclosure. In particular, Defendants would argue that after the disclosure Stronghold's stock increased from 17.24/share to $19.79/share to support their negative causation argument.

### 2.    The Effective Process for Distributing Relief to the Settlement Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. A potential class member will submit, by mail or online, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶24. Plaintiff's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶30.  Any claim disputes that cannot be resolved will be presented to the Court for a determination.  *Id*.

After the Settlement reaches its Effective Date (*Id*. at ¶39) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to

conduct further distributions. If there are unclaimed funds, Plaintiff requests a *cy pres* beneficiary of Howard University School of Law Investor Justice Clinic or another non-sectarian, not-for-profit charitable organization approved by the Court. Stipulation at ¶27.

### 3.    The Settlement Does Not Excessively Compensate Lead Counsel

As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation Expenses. The Settlement does not contemplate any specific award. Plaintiff's Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants. In connection with Lead Counsel's Fee and Expense Application, Lead Counsel will seek, on behalf of Plaintiff's Counsel, no more than one third of the Settlement Fund, an amount that is within the range of percentages that courts in the Second Circuit have approved in class actions with comparable recoveries. *See, e.g. In re Revolution Lighting Techs., Inc. Sec. Litig.*, No. 1:19-CV-00980-JPO, 2020 WL 4596811, at *3 (S.D.N.Y. Aug. 11, 2020) (awarding one-third of $2,083,333.33 settlement prior to filing amended complaint); *Kristal v. Mesoblast Ltd.*, 2022 WL 3442535, at *1 (S.D.N.Y. Aug. 15, 2022) ($2 million settlement, see *Irene KRISTAL, Individually and on behalf of all others similarly situated, Plaintiff, v. MESOBLAST LIMITED, Silviu Itescu, Josh Muntner, and Fred Grossman, Defendants.*, 2022 WL 4371039); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) ($4.9 million partial settlement prior to formal discovery, see *In Re AKAZOO S.A. SECURITIES LITIGATION.*, 2021 WL 4523811). Counsel will also seek payment of Litigation Expenses incurred during the prosecution of the Action, in an amount not to exceed $300,000.

12

**E.     Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably Relative to One Another**

The Settlement does not improperly grant preferential treatment to either Plaintiff or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[8] The proposed plan was created by Plaintiff's claims administrator and is consistent with Plaintiff's theories of damages under the Securities Act. All Settlement Class Members that were allegedly harmed as a result of the misleading Offering Documents, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Loss" under the plan. Notice at ¶¶ 56-69. *See, e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").[9]

---

[8] Plaintiff will seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to its participation in the Action, pursuant to the PSLRA. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

[9] Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. Here, on July 18, 2024 the Parties entered into a Confidential Memorandum of Understanding and on November 6, 2024, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement"). Stipulation at ¶ 41. The Supplemental Agreement sets forth the conditions under which Settling Defendants have the sole option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

F.       **The Remaining *Grinnell* Factors Support Preliminary Approval**[10]

*Grinnell* **Factor 3 (the stage of the proceedings and the amount of discovery completed):** The fact that the Parties have not completed discovery does not weigh against preliminary approval. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425–426 (S.D.N.Y. 2001) (noting extensive discovery is unnecessary); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). As stated above, prior to agreeing to a settlement, Plaintiff conducted a thorough and informed investigation, engaged in extensive motion practice including briefing on Defendants' motion to dismiss, received and reviewed more than 10,000 pages in document discovery from Defendants and third parties, and participated in many months of arms-length settlement negotiations. Accordingly, Plaintiff and Lead Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

*Grinnell* **Factors 8 and 9 (the range of reasonableness of the settlement fund in light of the best possible recovery and to a possible recovery in light of all the attendant risks of litigation):** Courts typically analyze the last two *Grinnell* factors together, "consider[ing] and weigh[ing] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462).

---

[10]The second *Grinnell* factor (the reaction of the class to the settlement) will be addressed in Plaintiff's reply papers in connection with their motion for final approval, after notice of the Settlement is disseminated, and will address any objections and any additional for exclusion.

14

As discussed above, if liability were established, Plaintiff's expert has estimated class wide maximum aggregate damages at $97 million or $5.5 million considering Defendants' negative causation arguments.   The Settlement, therefore, represents approximately 8.2% of the total maximum recoverable damages or approximately a full recovery after considering Defendants' defenses. The recovery is within the range of reasonableness. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (average settlement ranges from 3% to 7% of total estimated losses). According to Cornerstone Research, the median recovery in cases alleging Section 11 claims was approximately 7.5% of statutory damages between 2014 and 2023.[11] In light of these circumstances and all of the delay and uncertainty that would be inherent in continued litigation, the Settlement falls well within the range of possible recovery considered fair, reasonable and adequate.[12]

## II.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In preliminarily approving the proposed Settlement, the Court must consider whether to certify the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3). The proposed Settlement Class, which has been stipulated to by the Parties, is "all persons and entities who or which purchased or otherwise acquired the publicly traded Stronghold's Class A common stock on or before December

---

[11] Cornerstone Research: Securities Class Action Settlements, 2023 Review and Analysis *available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf

[12] Grinnell Factor 7, a defendant's ability to withstand a judgment greater than that secured by settlement is generally not one of the determining factors. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other Grinnell factors weigh heavily in favor of settlement approval.'").

15

20, 2021, pursuant and/or traceable to the Offering Documents issued in connection with the Class A common stock initial public offering in October 2021 and were damaged thereby."[13] Stipulation at ¶1(ll).

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Although the trial court may disregard management issues in certifying a settlement class, the proposed class must still satisfy the other requirements of Rule 23. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997). Specifically, to preliminarily certify a settlement class, the Court must determine whether the threshold requirements of Rule 23(a) and 23(b)(3) are met: numerosity; commonality; typicality; adequacy of representation; and predominance and superiority. *Id*. at 613-15. The Court need not conduct a rigorous analysis to certify a settlement class, reserving such scrutiny for final approval. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). The proposed Settlement Class readily meets the standard for preliminary certification.

A.    **Numerosity**

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Lead Plaintiff must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate."

---

[13] (i) Defendants; (ii) Immediate Families of the Individual Defendants; (iii) any person who was an officer, director, or control person of Stronghold and  the Underwriter Defendants, (at all relevant times, and members of their Immediate Families); (iv) Stronghold's employee retirement and/or benefit plan(s) and their participants and/or beneficiaries to the extent they purchased or acquired Stronghold's Class A common stock through any such plan(s); (v) any entity in which any Defendant has or had a controlling interest; and (vi) the legal representatives, heirs, successors, or assigns of any such excluded person or entity.  Also excluded from the Settlement Class will be any Persons who or which exclude themselves from the Settlement Class by submitting a timely and valid request for exclusion that is accepted by the Court.  However, any Investment Vehicle (as defined above) will not be excluded from the Settlement Class.

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members.". Here, there are likely hundreds, if not thousands, of potential Settlement Class Members given that the Initial Public Offering ("IPO") was for 7,690,400 shares of Stronghold Class A common stock. Thus, the numerosity requirement is met.

### B.    Commonality

The commonality requirement, which "is applied permissively," asks only whether there are "questions of law or fact common to the class." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007). All that is required is that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). Securities fraud cases easily satisfy this standard where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions," *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). Here, the common issues are whether Defendants made material false statements or omissions in connection with Stronghold's October 2021 IPO and the extent of the damages sustained by the Settlement Class.

### C.    Typicality

The Rule 23(a)(3) typicality requirement is fulfilled when "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). In a securities case, typicality exists where all class members were allegedly harmed by "the distribution of false and misleading information which artificially inflated the stock." *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002). Plaintiff alleges a common course of conduct affecting all

17

Settlement Class Members who all purchased or otherwise acquired Stronghold's Class A common stock on or before December 20, 2021, pursuant and/or traceable to the Offering Documents issued in connection with the Class A common stock IPO in October 2021 and were damaged thereby. Plaintiff's claims stand or fall with those of the Settlement Class and thus, it is typical.

### D.    Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, a showing that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, that the representative parties' counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *EVCI*, 2007 WL 2230177, at *13.

### 1.    Adequacy of the Proposed Class Representative

Plaintiff's interest is aligned with, not antagonistic to, those of the proposed Settlement Class. Lead Plaintiff, purchased or otherwise acquired Stronghold's Class A common stock on or before December 20, 2021, pursuant and/or traceable to the Offering Documents issued in connection with Stronghold's October 2021 IPO and was damaged thereby is seeking on its own behalf, and on behalf of all class members, to maximize the recovery of damages from Settling Defendants. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest…"). Plaintiff is an adequate class representative.

### 2.    Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex

litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Lead Counsel is experienced in prosecuting class actions having successfully prosecuted securities class actions in this Court and courts throughout the country. Courts have consistently found Rosen Law to be well suited as class counsel in securities class actions showing that Rosen Law understands the intricacies inherent in litigating actions against such defendants. *See Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million Alibaba securities settlement, the Court stated that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case . . ."); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) ([T]he Rosen Law firm is well-qualified to serve as lead counsel in this matter."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("[Rosen Law] is 'highly qualified [and] experienced' in securities class actions"). Lead Counsel's firm resume was filed as Dkt. No. 19-4.

The Settlement was achieved after Lead Counsel spent considerable time for the benefit of shareholders. Lead Counsel conducted a comprehensive investigation, including retaining a private investigator, reviewing Stronghold's public filings, and retaining a damages expert. Lead Counsel defeated the Stronghold and Underwriter Defendants' motions to dismiss, conducted document discovery, and began the process of certifying this class. Additionally, Lead Counsel drafted and served document requests on Defendants, met and conferred multiple times with Defense Counsel about their responses and objections to those document requests and Lead Plaintiff's draft ESI Protocol, and negotiated a protective order with Defense Counsel. Lead counsel reviewed more than 10,000 pages of documents from Defendants and third parties. Lead

19

Counsel also participated in the mediation and settlement discussions, including drafting a mediation statement. Thus, Lead Counsel should be appointed as Class Counsel.

**E.**     **Common Questions Predominate, and the Class Is Superior to Other Methods of Adjudication**

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3), which requires finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This case satisfies the predominance and superiority criteria.

When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). This case illustrates the principle that predominance is "readily met" in securities matters, *Amchem*, 521 U.S. at 625, because, were each class member to bring an individual action, proof of liability would require every plaintiff to demonstrate that Settling Defendants made the same alleged misstatements.

The superiority inquiry compares class actions to other possible methods of adjudication. Pursuant to Fed. R. Civ. P. 23(b)(3), factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Because of the PSLRA's notice and Lead Plaintiff provisions, subsections (B) and (C) have already been resolved, and subsection (D) does not apply to settlements. With respect to subsection

20

(A), those investors damaged by securities law violations whose losses do not run into several millions of dollars would likely have no practical recourse. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Furthermore, if individuals *do* have the means to litigate their own case, absent a class action, this Court would have to try many lawsuits.

As set forth above, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Settling Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). As such, the Court should conditionally certify the Settlement Class for settlement purposes.

## III.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Notice, Summary Notice, and Postcard Notice attached as Exhibits 1, 3, and 4 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.* 396 F.3d at 114.

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the

21

Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a Claim Form; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Settlement Hearing (which can be held in-person or remotely, in the Court's discretion). The long form Notice also satisfies the PSLRA's separate requirements by, *inter alia,* stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the names, telephone numbers, and addresses of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. §77z-1(a)(7)(A)-(F).

The proposed notice program uses the "gold standard" method in securities cases for notifying class members: individual notice by mail, publication in *Investor's Business Daily*, a national newspaper focusing on investors, and dissemination over the internet using a wire service. To the extent email addresses are provided to the Claims Administrator, the Postcard Notice will also be emailed.  Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Postcard Notice and Claim Form to all Settlement Class Members who can be identified and located, using information provided by Stronghold's transfer agent, as well as information provided by banks, brokers, and other nominees about their customers who may have eligible purchases. The Notice and Claim Form will be available on the Settlement website and Lead Counsel's website. Courts routinely find these methods of notice sufficient. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n. 3 (S.D.N.Y. 2014) ("combination of a

22

mailed post card directing class members to a more detailed online notice has been approved by courts.") (citations omitted); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-04846-NGG-PK, 2021 WL 345790, at *3–4 (E.D.N.Y. Feb. 1, 2021) (notice included emailed summary notice, mailed postcard notice, disseminating summary notice, and website).

Plaintiff also requests that the Court appoint SCS as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. SCS is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Plaintiff respectfully proposes the following schedule for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Plaintiff requests be approximately 100 days from entry of the Preliminary Approval Order in for the notices to be disseminated and to allow recipients of the notices sufficient time to act:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice Settlement Class Members (the "Notice Date") | *No later than 5 business days after the first of the month after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | *No later than 7 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *Five (5) business days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, approximately 120 days from entry of the Preliminary* |

| | *Approval Order. The hearing can be held either in-person or remotely, in the discretion of the Court. Any scheduling updates will be posted on the Settlement website and Lead Counsel's website.* |
|---|---|

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint SCS as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

DATED: November 8, 2024

**THE ROSEN LAW FIRM, P.A.**


/s/ Jonathan Stern
Laurence Rosen
Jonathan Stern
Phillip C. Kim
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Fl.
New York, New York 10016

*Counsel for Plaintiff and the Proposed Settlement Class*

24