**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK WINTER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>STRONGHOLD DIGITAL MINING, INC., GREGORY A. BEARD, RICARDO R. A LARROUDÉ, WILLIAM B. SPENCE, B. RILEY SECURITIES, INC., COWEN AND COMPANY, LLC, TUDOR, PICKERING, HOLT & CO. SECURITIES, LLC, D.A. DAVIDSON & CO., COMPASS POINT RESEARCH & TRADING, LLC, and NORTHLAND SECURITIES, INC.,<br><br>    Defendants. | Case No. 1:22-cv-03088-RA |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF**
<u>**CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**</u>

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................... 1

II.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS . 3

III.  ARGUMENT ......................................................................................................... 4

   A.   The Settlement is Fair, Reasonable, and Adequate in Light of The Factors Outlined
        by Rule 23(e)(2) and the Remaining *Grinnell* Factors ...................................... 4

      1.   Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class ... 4

      2.   The Settlement is the Result of Arm's Length Negotiations ..................................... 6

      3.   The Settlement is an Excellent Result for the Class in Light of the Benefits of the
           Settlement and the Risks of Continued Litigation .......................................... 6

         (a)   Complexity, Expense and Duration of Litigation ..................................... 7

         (b)   Establishing Liability and Damages........................................................ 9

         (c)   Risks of Maintaining Class Action Status.............................................. 11

         (d)   Range of Reasonableness in Light of the Best Possible Recovery and Attendant
               Risks of Litigation ........................................................................... 11

      4.   The Remaining Rule 23(e) Factors Support Final Approval................................... 13

      5.   The Settlement Treats all Members of the Class Equitably Relative to Each Other
           ............................................................................................................. 15

      6.   The Settlement Class's Reaction to the Settlement Supports Final Approval ....... 15

      7.   The Remaining *Grinnell* Factors are Neutral or Weigh in Favor of Final Approval
           ............................................................................................................. 16

   B.   The Plan of Allocation is Fair and Reasonable ............................................... 18

   C.   The Settlement Class Should be Finally Certified ............................................ 19

   D.   The Notice Program Satisfies Rule 23 and Due Process ................................... 20

IV.  CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ....................................................................................... 7

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) .............................................................................................. 4

*Beach v. JPMorgan Chase Bank, N.A.*,
2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) .................................................................... 4

*Cagan v. Anchor Sav. Bank FSB*,
1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................................... 13

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................................ 11

*Christine Asia Co., Ltd. v. Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................... 14

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .................................................................................. 4, 7, 13

*City of Providence v. Aeropostale*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................................................. 7, 18

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .............................................................................................. 6

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............................................................... 14

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .................................................................. 8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................... 18

*In re "Agent Orange" Prods. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ................................................................................ 12

*In re Alloy, Inc. Sec. Litig.*,
2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) .................................................................... 8

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................... 8, 17

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................... 7, 8

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................... 7, 16

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)....................................................................... 7, 15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................. 18

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................. 9, 10, 11

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................................. 7, 9, 11

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................ 10, 17

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) .............................................................................. 15

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................... 11

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................................. 15

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) .............................................................................. 20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................. 5

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 F. App'x 760 (2d Cir. 2020)............................................................................... 4, 5

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................... 11

iii

*Maley v. Del Glob. Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................ 14, 16

*McMahan & Co. v. Wherehouse Ent., Inc.,*
    65 F.3d 1044 (2d Cir. 1995) ................................................................................ 10

*Meredith Corp. v. SESAC, LLC,*
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................... 18

*Morris v. Affinity Health Plan, Inc.,*
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................. 13

*Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.,*
    2023 WL 1454371 (M.D. Pa. Feb. 1, 2023) ......................................................... 6

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ............................................................................. 6, 20

## Statutes

15 U.S.C. § 77k(e) .......................................................................................................... 10

## Rules

Fed. R. Civ. P. 23 .................................................................................................. passim

Pursuant to Fed. R. Civ. P. 23(e), the Court-appointed Lead Plaintiff Allegheny County Employees Retirement System ("Lead Plaintiff"), on behalf of itself and the Settlement Class, respectfully submits this memorandum of law in support of its motion for final approval of the proposed Settlement and Plan of Allocation.[1]

## I.    INTRODUCTION

Lead Plaintiff achieved a highly favorable resolution of the Action. The proposed Settlement will resolve all claims against Stronghold Digital Mining, Inc. ("Stronghold" or the "Company"), Gregory A. Beard, William B. Spence (together with Stronghold, the "Stronghold Defendants"), B. Riley Securities, Inc., Cowen and Company, LLC, Tudor, Pickering, Holt & Co. Securities, LLC, D.A. Davidson & Co., Compass Point Research & Trading, LLC, and Northland Securities, Inc. (collectively, the "Underwriter Defendants"), and Ricardo R. A. Larroudé, (together with the Underwriter Defendants and Stronghold Defendants, the "Settling Defendants") in exchange for a non-reversionary cash payment of four million seven hundred and fifty thousand ($4.75 million) and the US dollar value of 25 Bitcoins currently valued at $90,545.92 per Bitcoin[2]. As described below and in the Stern Declaration, the Settlement provides a significant and certain recovery in a case that presented numerous hurdles and risks.

By the time the Settlement was reached, Lead Plaintiff and its counsel were well informed

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation of Settlement (the "Stipulation") dated November 8, 2024 (Dkt. No. 121), the Declaration of Jonathan Stern in Support of Lead Plaintiff's Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff (the "Stern Declaration" or "Stern Decl."), filed concurrently with this motion, or the Amended Complaint (Dkt. No. 48). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Stern Declaration.

[2] Based on the Nasdaq Bitcoin Reference Price Index (NQBTC) as of March 6, 2025. *Available at* https://indexes.nasdaq.com/Index/History/NQBTC.

1

about the strengths and weaknesses of the claims as well as Defendants' defenses. Indeed, as described in the Stern Declaration, Lead Plaintiff and its counsel engaged in extensive actions to evaluate and prosecute their claims, including (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company; (ii) engaging a damages and causation expert; (iii) defeating, in part, the Underwriter and Stronghold MTDs; (iv) engaging in discovery, including the review of more than 10,000 pages of documents; (v) preparing the Class Certification Motion; (vi) engaging in arm's-length negotiations between experienced counsel with the assistance of a well-respected Mediator. ¶9. As discussed in greater detail below and in the Stern Declaration, Lead Plaintiff and Lead Counsel believe the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. Accordingly, Lead Plaintiff respectfully requests the Court grant final approval of the Settlement.[3]

Lead Plaintiff also requests approval of the Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiff's damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. ¶¶54-63. As such, Lead Plaintiff respectfully submits that it is fair and should be approved.

Finally, the notice program constituted the "best notice...practicable under the circumstances" and thus satisfies Rule 23 and due process. In total, 51,500 potential Settlement Class Members were notified of the Settlement by either mailed Postcard Notice or emailed direct link to the Long Notice and Claim Form. *See* Declaration of Sarah Evans Concerning: (A) Mailing

---

[3] The Stern Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of the factual background and the nature of the claims asserted (¶¶6, 14); the work done by Lead Plaintiff and Lead Counsel to prosecute the Action (¶¶9, 15-30); the risks and uncertainties of the litigation(¶¶32-39); and the negotiations leading to the Settlement (¶¶26-30).

of the Notice and Claim Form; (B) Publication of the Summary Notice; And (C) Report on Requests for Exclusion and Objections ("Evans Declaration" or "Evans Decl."), Ex. 2 at ¶8. 12. While the deadline to request exclusion or object to the Settlement has not yet passed, it is indicative of the Settlement's high quality that no objections or requests for exclusion have been received to date. *Id.,* at ¶¶13-14.

In sum, the Settlement is both procedurally and substantively fair, reasonable, and adequate. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation.

## II.      STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[4] Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)      have the class representatives and class counsel adequately represented the class;
(B)      was the proposal negotiated at arm's length;
(C)      is the relief provided for the class adequate, taking into account:
    (i)      the costs, risks, and delay of trial and appeal;
    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)     any agreement required to be identified under Rule 23(e)(3); and
(D)      does the proposal treat class members equitably relative to each other.

---

[4] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

The Rule 23(e)(2) factors are not exclusive, nor intended to displace any factor previously adopted by the courts.  The Second Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*). As set forth below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

## III.    ARGUMENT

### A.    The Settlement is Fair, Reasonable, and Adequate in Light of The Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors

#### 1.    Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests

are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").

First, Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests. Lead Plaintiff suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and his interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See Patriot*, 828 F. App'x at *764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."). In addition, Lead Plaintiff diligently oversaw the litigation, conducted its own research and investigation of the Company, and communicated with his respective counsel on a regular basis. *See* Declaration of Lead Plaintiff Allegheny County Employees Retirement System ("ACERS Declaration" or "ACERS Decl."), Ex. 3 at, ¶¶3-4.

Second, Lead Plaintiff retained counsel who is highly experienced in securities litigation, and has a long and successful track record representing investors in such cases. *See* Ex. 4-A. (Rosen Law's Firm Resume). As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the case's strengths and weaknesses prior to entering the Settlement. ¶67 (detailing counsel's extensive investigation of Stronghold, drafting detailed amended complaint, opposition to motion to dismiss, serving document requests on Defendants and meeting and conferring multiple times about them, drafting a detailed mediation statement, and participating in a full-day mediation session). *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 2.    The Settlement is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Here, as detailed in the Stern Declaration and Declaration of Greg Danilow ("Danilow Decl."), Ex. 1, the mediation process was hard-fought and included a full-day mediation session. ¶10; Danilow Decl. at ¶¶12-14. Mr. Danilow's declaration attests to the integrity of the mediation process and endorses the Settlement as being in the best interests of the Settlement Class. *Id.* at ¶¶13-14. Mr. Danilow's participation in the instant Settlement underscores that it is the product of non-collusive, arm's-length negotiations. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*, 2023 WL 1454371, at *10 (M.D. Pa. Feb. 1, 2023) (Mr. [Danilow's] involvement as a mediator and a settlement as a result of his proposal "demonstrates that the settlement reached between the parties resulted from an extensive good faith, arm's length negotiation.").

### 3.    The Settlement is an Excellent Result for the Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account ... the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[5] As discussed below, each of these factors supports the Settlement's approval.

---

[5]Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial

### (a)    Complexity, Expense and Duration of Litigation

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *City of Providence v. Aeropostale*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Further litigation would have required substantial additional expenditures of time and resources, involving complex issues of law and fact, with a significant risk of a lower recovery. ¶¶33-35; *see In re AOL Time Warner, Inc.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

In the absence of the Settlement, the Action would have required extensive fact and expert discovery, as well as litigating a class certification motion, summary judgment motions, and *Daubert* motions, followed by proving Lead Plaintiff's claims at trial, post-trial motions, and appeals. Throughout each litigation phase, Lead Plaintiff would undoubtedly have continued to

---

(sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

face a robust defense from Defendants' experienced counsel. *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities class action "likely to be litigated aggressively, at substantial expense to all parties"). As a result of such "notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *AOL Time Warner*, 2006 WL 903236, at *8.

Even if Lead Plaintiff could recover an equally large judgment after a trial and recover from Defendants – both of which are not certain given the risks – the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, further reducing its value. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Additionally, there is a very significant risk that, due to Stronghold's publicly available financial condition, further litigation might yield a smaller recovery – or no recovery at all – several years in the future. *See, e.g., Hicks v. Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (protracted litigation could force a company experiencing financial difficulties into bankruptcy and foreclose significant recovery for the class). The Settlement eliminates the expense and delay of continued litigation, the depletion of existing resources for settlement funds, and the risk that the Settlement Class could receive no recovery.

(b)    **Establishing Liability and Damages**

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *GSE*, 414 F. Supp. 3d at 694. While Lead Counsel believes that Lead Plaintiff's claims are meritorious, they also recognize that they faced substantial obstacles to proving liability and damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**Establishing Liability:** Lead Plaintiff faced significant hurdles to establishing Defendants' liability. Although the alleged misstatements that Lead Plaintiff pled in the Amended Complaint survived Defendants' motion to dismiss, to survive a summary judgment motion, Lead Plaintiff would need to prove — not merely allege — that the registration statements contained materially false or misleading statements. Additionally, Lead Plaintiff expected Defendants to continue to pursue their negative causation defense on summary judgment. ¶34. Furthermore, even if it survived summary judgment, Lead Plaintiff would then have to establish each element of its claims and refute Defendants' affirmative defenses to a jury's satisfaction. And if Lead Plaintiff won at trial, it would have to survive Defendants' inevitable appeals.

**Damages:** It is axiomatic that proving damages in cases brought under the federal securities laws is complex and fraught with risk. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud."). The situation is no different here. As a result of Lead Plaintiff's investigation, including consultation with experts, the significant

9

discussions conducted by the mediator, and discussions directly with defense counsel, Lead Counsel obtained a clear preview of what arguments would be made to contest Lead Plaintiff's establishment of class-wide damages.

The statutory measure of damages under Section 11 is the difference between the lesser of the purchase price and IPO price for Stronghold Class A common stock and the price on the date this suit was filed. 15 U.S.C. § 77k(e). Here, during the IPO the Company sold 7,690,400 shares of Class A common stock at a price of $19.00 per share. Settling Defendants argue that before any alleged misrepresentation was revealed to the market, Stronghold's stock price had already dropped nearly 50% from its $19.00 IPO price due to reasons unrelated to this Action. ¶34, Ex. 5. Section 11 of the Securities Act, however, provides a negative causation defense under which defendants can reduce the amount of damages by establishing that "the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement." *See McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995). Defendants would point to the fact that there was as increase in price two days after the initial November 30, 2021 disclosure. In particular, Defendants would argue that the fact that after the disclosure Stronghold's stock increased from $17.24/share to $19.79/share supports their negative causation argument.

If damages were ultimately contested at trial, the Parties would rely on expert testimony to assist the jury in determining damages. *See Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). Here, Defendants almost certainly would have presented their own damages expert(s), who would have no doubt presented conflicting conclusions and theories for what caused the price decline of Stronghold's Class A common stock. *See In re IMAX Sec.*

10

*Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."). In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008).

### (c)    Risks of Maintaining Class Action Status

While Lead Plaintiff and Lead Counsel are confident that the Settlement Class meets the requirements for certification, a class had not yet been certified. Lead Plaintiff is aware that there is a risk the Court could accept certain of Defendants' arguments limiting a potential class.  ¶36. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification. *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated."); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement").

### (d)    Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with

11

the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). Here, the proposed Settlement provides an immediate cash payment of four million seven hundred and fifty thousand ($4.75 million) in cash and the US dollar value of 25 Bitcoins[6], for the benefit of the Settlement Class. Based on a $86.638.78 valuation of Bitcoin, this represents a $7,013,648 recovery. This is a highly favorable result in light of the significant risks of continued litigation. Plaintiff's damages expert estimated a maximum of $97 million recoverable in statutory damages, and $54.3 million assuming Plaintiffs can only recover on statistically significant drops related to the misstatements. The Settlement therefore offers a recovery of more than 7.2%[7] of the maximum statutory damages, and 12.9% of damages only using statistically significant drops. According to Cornerstone Research, the median recovery in cases alleging Section 11 claims was approximately 7.5% of statutory damages between 2014 and 2023.[8] The result looks even more favorable when one considers, as discussed

---

[6] Per the Stipulation, ¶6, Stronghold is required make the cash value of bitcoin payments according to the following schedule: the US dollar value of 25 Bitcoins according to the following schedule: (1) the US dollar value of one Bitcoin on the third business day of the month following Preliminary Approval, (2) the US dollar value of one Bitcoin on the third business day of every month for each of the twenty-two months immediately following the first Bitcoin payment, (3) on the third business day of the 24th month following Preliminary Approval, the US dollar value of 2 Bitcoins. Stronghold has made the February and March payments as required in the stipulation. Due to the timing of the holidays, Stronghold was delayed in making the January 2025 payment. The parties have conferred on this matter and Stronghold has assured Plaintiffs they anticipating making the January payment by next week, and in any event no later than April 3, 2025. On February 27, 2025, Stronghold announced that its shareholders approved a merger with the larger bitcoin mining company Bitfarms Ltd., which trades under Nasdaq and the Toronto Stock Exchange under the symbol TSX. Stronghold's merger with a larger Bitcoin mining company ensures its financial stability and therefore its ability to continue to make payments required under the Stipulation.

[7] The Motion for Preliminary Approval inadvertently stated that the recovery was 8.2% of maximum recoverable damages due to a calculation error.

[8] Cornerstone Research: Securities Class Action Settlements, 2023 Review and Analysis *available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf

in the previous section, that Defendants will argue that the absolute maximum statutory damages still available in this case is actually approximately $5.5 million. The Settlement represents a recovery of more than 100% of those damages. The recovery here is well above recoveries courts have declared reasonable. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million.").

### 4.    The Remaining Rule 23(e) Factors Support Final Approval

**The Proposed Method of Distribution to the Class is Effective (Rule 23 (e)(2)(C)(ii)):**

The Settlement proceeds will be allocated to Settlement Class Members who submit valid Claim Forms in accordance with the Plan of Allocation. *See* Sec. III.B., *infra*. Strategic Claims Services ("SCS"), the Court-appointed Claims Administrator, has and will continue to process claims under Lead Counsel's guidance. SCS has and will continue to allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective.[9]

---

[9] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have

13

**The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii)):** The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees are taken into account. As discussed in detail in the accompanying Fee Memorandum, the proposed attorneys' fees of one-third of the Settlement Fund to be paid upon Court approval are reasonable in light of the substantial work, efforts and success of Lead Counsel, their significant investment of resources in the case, their skillful prosecution of the Action for the benefit of the Settlement Class, the risks that they faced in the litigation, and the overall benefit of the Settlement achieved. The requested attorneys' fees of one-third of the Settlement Fund is also consistent with awards in similar complex class action cases. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for one-third of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."); Fee Memorandum, § III.C.1. More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶19.

**Other Agreements Related to the Settlement Rule 23(e)(2)(C)(iv) & 23(e)(3):** The Parties entered into a confidential agreement establishing conditions under which the Company may terminate the Settlement if Settlement Class Members who collectively have claims equating to a certain dollar amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at

---

any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶6.7.

14

*11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### 5.    The Settlement Treats all Members of the Class Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether a settlement treats class members equitably relative to one another.  This Settlement easily satisfies that standard.  As discussed in Sec. III.B, *infra*, the proposed Plan of Allocation, developed by Lead Plaintiff's expert in conjunction with Lead Counsel, reflects an assessment of damages Lead Plaintiff contends could have been recovered under the theory of liability in the Action.  ¶56.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Loss of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id*. Courts have repeatedly approved similar plans. *See e.g.*, *In re Citigroup Inc. Securities Litigation*, 965 F. Supp. 2d at 386-87; *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (approving plan of allocation as fair and reasonable where it treated class members equally and on a *pro rata* basis and comported with the plaintiffs' theory of damages).

### 6.    The Settlement Class's Reaction to the Settlement Supports Final Approval

The second *Grinnell* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object.  As required by Rule 23(e)(4) and (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. *See* Ex. 2-B (Long Notice) at pp. 2. To date, no requests for exclusion or objections have been received, despite the fact that as of March 6, 2025

15

a total of 51,500 potential Settlement Class Members were notified about the Settlement either by the mailing of a hard copy of the Postcard Notice or by an email with links to SCS's website to download the Notice and Claim Form. Evans Decl., at ¶¶8, 13-14.[10] Additionally, Summary Notice was printed in *Investor's Business Daily* and electronically disseminated over *GlobeNewswire*. *Id.* at ¶10. The Settlement Class's universally positive reaction strongly supports final approval of the Settlement. *See Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

      **7.**      **The Remaining *Grinnell* Factors are Neutral or Weigh in Favor of Final Approval**

*Grinnell* also outlined factors that are not coextensive with Rule 23(e)(2)'s new factors. These factors, viewed in light of the Rule 23(e)(2) factors identified above, support final approval.

**<u>The Stage of the Proceedings and the Amount of Discovery Completed</u>:**  This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement."  *In re Bear Stearns Companies, Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d at 267. When the Parties agreed to settle, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of his claims and the defenses asserted, and made an informed appraisal regarding his chances of success.

At the time of settlement, Lead Counsel expended significant time and resources developing their understanding of the Action, which included, among other things: (1)  a comprehensive investigation that involved, among other things, a review of publicly available

---

[10] The deadline to request exclusion from, or to object to any aspect of, the Settlement March 21, 2025; any exclusions or objections received after this filing will be addressed on reply.

information regarding the Company; (2) engaging a damages and causation expert; (3) defeating, in part, the Underwriter and Stronghold Motions to Dismiss; (4) commencing in discovery, including the review of more than 10,000 pages of documents; (5) preparing the Class Certification Motion; (6) engaging in arm's-length negotiations between experienced counsel with the assistance of a well-respected Mediator; (7) drafted and negotiated a settlement term sheet, the Stipulation (including the exhibits thereto), and Supplemental Agreement with Defendants; (8) worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly; (9) drafted the preliminary approval motion; (10) oversaw the implementation of the notice process to Settlement Class Members; and (11) drafted the motion for final approval.  ¶67.

As a result of these efforts, Lead Plaintiff and Lead Counsel had a thorough understanding of the claims and defenses asserted in the Action, the significant risks to establishing liability and damages, and the chances of collecting a greater judgment. This understanding enabled Lead Plaintiff and Lead Counsel to negotiate the Settlement intelligently and responsibly. Thus, depositions in the Action does not weigh against final approval. *See, e.g.*, *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."); *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 425-426 ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery… 'Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.'").

17

**The Ability of Defendants to Withstand a Greater Judgment**: Defendants potential inability to withstand a greater judgment (*Grinnell* factor seven) weighs heavily in favor of final approval. Stronghold has limited D&O coverage, which was being depleted as litigation continued. Thus, this is a highly favorable result, and was obtained without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

Conversely, if the litigation continued, the limited assets would have continued to drain. Defendants would likely spend millions of dollars if the litigation continued. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("settlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the [] Defendants are taken into account").

**B.    The Plan of Allocation is Fair and Reasonable**

A plan of allocation, like a settlement itself, "must be fair and adequate" to warrant approval. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015). A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent class counsel.'" *City of Providence*, 2014 WL 1883494, at *10. Accordingly, "courts look primarily to the opinion of counsel" in determining if a proposed plan of allocation is fair and adequate to warrant approval. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011).

Here, the proposed Plan of Allocation, which was developed with the help of Lead Plaintiff's damages expert, is set forth in the Long Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Ex. 2-B (Long Notice) at pp. 5-6. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss for each Authorized Claimant based on the number

18

of Stronghold's Class A common stock on or before December 20, 2021, pursuant and/or traceable to the Offering Documents. *Id.*

The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation is explained in detail in the Long Notice and will be based on several factors, including the number of Stronghold Class A common stock the Settlement Class Member purchased and sold, and the difference between the purchase price of Stronghold Class A common stock and the price at which the Settlement Class Member sold them or the price on the date this suit was filed if the Settlement Class Member still held them at that time. The Net Settlement Fund will be allocated to Authorized Claimants—including Lead Plaintiff —on a *pro rata* basis and in accordance with the various allocations detailed above.

Lead Counsel believes that the proposed Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the wrongful conduct alleged in the Action. ¶62. To date, no objections to the Plan of Allocation have been filed on this Court's docket or received by Lead Counsel, suggesting that the Settlement Class also finds the Plan of Allocation to be fair and reasonable. ¶63. Accordingly, Lead Plaintiff respectfully submits that the proposed Plan of Allocation is fair and reasonable, and merits final approval from the Court.

### C.    The Settlement Class Should be Finally Certified

The Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* Dkt. No. 61-1, ¶2. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Lead Plaintiff's Memorandum of Law in Support of Motion for Entry of Order Preliminarily Approving Settlement and Establishing Notice Procedures (*see* Dkt. No. 63 at 4-11), Lead Plaintiff

19

respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### D.    The Notice Program Satisfies Rule 23 and Due Process

Rule 23(e) and due process together require that notice of a settlement be "reasonable"— *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). Both the notice program's substance and method of dissemination satisfy those standards here.

In accordance with the Preliminary Approval Order, the Claims Administrator: (i) emailed links to the Long Notice and Claim Form on SCS's website, to Settlement Class Members for whom SCS was able to obtain email addresses; (ii) mailed the Postcard Notice to Settlement Class Members if no email address could be obtained with reasonable effort; and (iii) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to email links of the Long Notice and Claim Form. Evans Decl. ¶¶4-6.  The Notice directed potential Settlement Class Members to downloadable versions of the Long Notice and Claim Form posted online at www.strategicclaims.net/stronghold (the "Settlement Website"). *Id.* at ¶12. SCS also posted copies of the Stipulation, the Preliminary Approval Order, the Long Notice, and Claim

Form on the Settlement Website (*id.*) and established a toll-free number to respond to Settlement Class Member inquiries (*id.* at ¶11).

The Long Notice informs Settlement Class Members of, among other things: (1) the nature of the Action; (2) the Settlement Class definition; (3) the claims and defenses asserted; (4) a description of the terms of the Settlement; (5) the right of a Settlement Class Member to enter an appearance; (6) the right of a Settlement Class Member to request exclusion from the Settlement Class, and instructions on how to do so; (7) the right of a Settlement Class Member to object to any aspect of the Settlement, including the Plan of Allocation and the request for attorneys' fees and litigation expenses, along with instructions on how to do so; (8) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (9) the date and time of the final Settlement Hearing. *See* Fed. R. Civ. P. 23(c)(2)(B); Ex. 2-B (Long Notice). The Long Notice also advises that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund plus interest, as well as reimbursement of litigation expenses up to $250,000, and an Award to Lead Plaintiff directly related to its representation of the Settlement Class of up to $10,000. *Id*. Ex. 2-B (Long Notice).

Accordingly, the notice program satisfied both Rule 23 and due process.

## IV.    CONCLUSION

For the foregoing reasons, and for the reasons stated in the Stern Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.[11]

Dated: March 7, 2025                                  Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

---

[11] A proposed order will be filed in conjunction with Lead Plaintiff's reply brief.

21

/s/ Jonathan Stern

Laurence Rosen
Jonathan Stern
Phillip C. Kim
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Fl.
New York, New York 10016

*Counsel for Plaintiff and the Settlement Class*

22

**CERTIFICATE OF WORD COUNT PURSUANT TO LR 7.1(c)**

I, Jonathan Stern, certify that the foregoing Memorandum of Law in Support of Plaintiffs'

Final Approval of Class Action Settlement complies with LR 7.1(c). I further certify that the above

referenced memorandum contains 6,850 words.

/s/ Jonathan Stern
Jonathan Stern