**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK WINTER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>STRONGHOLD DIGITAL MINING, INC., GREGORY A. BEARD, RICARDO R. A LARROUDÉ, WILLIAM B. SPENCE, B. RILEY SECURITIES, INC., COWEN AND COMPANY, LLC, TUDOR, PICKERING, HOLT & CO. SECURITIES, LLC, D.A. DAVIDSON & CO., COMPASS POINT RESEARCH & TRADING, LLC, and NORTHLAND SECURITIES, INC.,<br><br>    Defendants. | Case No. 1:22-cv-03088-RA |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES,
AND AWARD TO LEAD PLAINTIFF**

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................................. 1

II.     FACTUAL AND PROCEDURAL HISTORY.................................................................. 3

III.    ARGUMENT...................................................................................................................... 3

  A.    The Common Fund Doctrine Applies to the Settlement ................................................ 3

  B.    The Court Should Award a Reasonable Percentage of the Common Fund ................. 4

  C.    The Requested Attorneys' Fees Are Reasonable .......................................................... 6

    1.    The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Fund
          Method ........................................................................................................................ 6

    2.    The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the
          Requested Fee............................................................................................................. 8

  D.    The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable........... 10

    1.    Time and Labor Expended Support the Requested Fee .......................................... 11

    2.    The Risks of Litigation Support the Requested Fee ................................................ 12

    3.    The Magnitude and Complexity of the Action Supports the Fee ........................... 17

    4.    The Quality of Representation Supports the Requested Fee................................... 18

    5.    The Requested Fee in Relation to the Settlement Amount ..................................... 21

    6.    Public Policy Considerations Support the Requested Fee ...................................... 22

  E.    Lead Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve
        the Benefit Obtained .................................................................................................... 22

  F.    Lead Plaintiff Should be Awarded His Reasonable Costs and Expenses Under 15
        U.S.C. § 78u-4(a)(4)..................................................................................................... 23

IV.     CONCLUSION ............................................................................................................... 24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................................................ 1

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) ...................................................................... 7, 24

*Asare v. Change Group of New York, Inc.*,
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ........................................................................ 10

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) .................................................................... 5, 10

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .......................................................................... 3

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ........................................................................... 6

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ............................................................................................ 20

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................................. 3

*Burns v. Falconstor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ....................................................................... 9

*Cagan v. Anchor Sav. Bank FSB*,
1990 WL 73423 (E.D.N.Y. May 22, 1990) ............................................................................ 19

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................................................... 15

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................................................... 20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .............................................................................................. 13, 19

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................... 18, 22

*Cornwell v. Credit Suisse Grp.*,
  2011 WL 13263367 (S.D.N.Y. July 18, 2011) ........................................................... 10

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................ 5, 10

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ..................................... 9

*Fogarazzo v. Lehman Bros.*,
  No. 03 CIV. 5194 SAS, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ....................................... 7

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ....................................................................... 16

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ................................................................... passim

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) .................................................................... 14

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................................ 7, 10

*Hayes v. Harmony Gold Mining Co.*,
  2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ............................................................ 7

*Hicks v. Morgan Stanley,*
  *& Co.*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................................... 4, 6

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) .......................................................... 21

*In re Akazoo S.A. Sec. Litig.*,
  2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) ........................................................... 6

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................ 17

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  772 F.3d 125 (2d Cir. 2014) ........................................................................ 24

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ......................................................... 16

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y July 16, 2007) ................................................................ 9

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005) ........................................................................ 6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..................................................................................... 15

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................... 22

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................................ 10

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..................................................... 9, 13

*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. June 14, 2005) ........................................................... 10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................................... 5, 20

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ............................................................ 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................. 13, 14, 22, 23

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y. 2008) .............................................................................. 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................. 13

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ passim

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ............................................................ 8

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003) ...................................................................... 22

iv

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................................... 10

*In re Lloyd's Am. Trust Fund Litig.*,
2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ......................................................... 7

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................... 15, 24

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................ 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................... 6

*In re Qudian Inc. Sec. Litig.*,
2021 WL 2328437 (S.D.N.Y. June 8, 2021) ........................................................... 24

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)...................................................................................... 5

*In re Signet Jewelers Limited Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................... 24

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................... 2

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)......................................................... 4, 18, 21, 24

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................... 5

*Johnson v. Brennan*,
2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)........................................................... 6

*Khait v. Whirlpool Corp.*,
2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................................................... 6

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................. 20

*Kristal v. Mesoblast Ltd.*,
2022 WL 3442535 (S.D.N.Y. Aug. 15, 2022)........................................................... 7

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009) ................................................................. 17

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............................................................. 7

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ..................................................................................... 8

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................... 4, 6, 9, 22

*McIntosh v. Katapult Holdings, Inc.*,
   2024 WL 5118192 (S.D.N.Y., 2024) .......................................................................... 6

*McMahan & Co. v. Wherehouse Ent., Inc.*,
   65 F.3d 1044 (2d Cir. 1995) ................................................................................... 15

*Mikhlin v. Oasmia Pharm. AB*,
   2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ............................................................. 20

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ................................................................................................. 4

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ................................................................................................. 8

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................................................... 7

*Monzon v. 103W77 Partners, LLC*,
   2015 WL 993038 (S.D.N.Y.  2015) ....................................................................... 5, 8

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ..................................................................... 19

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999) ..................................................................................... 8

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ......................................................... 12

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ................................................................................. 13

*Taft v. Ackermans*,
   2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................................................ 17

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ......................................................... 13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)...................................... 22

*Too v. Rockwell Medical, Inc.*,
   2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020)........................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................................. 5, 9

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)......................................................... 10

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. 2014)........................................................................ 16

*Zeltser v. Merrill Lynch & Co., Inc.*,
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)........................................................... 8

## Statutes

15 U.S.C. § 77k(e) ....................................................................................................... 15

15 U.S.C. § 78u-4(a)(4) ............................................................................................... 23

15 U.S.C. § 78u-4(a)(6) ................................................................................................. 5

Lead Plaintiff Allegheny County Employees Retirement System ("Lead Plaintiff")[1] respectfully requests that the Court grant the motion for: an award of attorneys' fees in the amount of one-third of the $4,750,000 cash and 25 Bitcoin Settlement Amount (*i.e.*, $1,583,333. cash and 8.3 Bitcoins plus interest); reimbursement of $122,022.28 plus interest, in litigation expenses that Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law") and Levi & Korsinsky, reasonably and necessarily incurred in prosecuting the Action; and reimbursement of $10,000 in total costs and expenses, including lost hours, incurred by Lead Plaintiff directly related to his representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.     INTRODUCTION

The proposed Settlement, which provides for a non-reversionary cash payment of $4,750,000 and the value of 25 Bitcoins (the "Settlement Amount"), is a highly favorable result for the Settlement Class particularly when juxtaposed against the significant hurdles Lead Plaintiff would have to overcome in order to prevail in this complex securities litigation. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability and damages. The risk of losing was a possibility, and such risk was enhanced by the fact that Lead Plaintiff was litigating a securities class action against defendants represented by a highly skilled defense firm. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation of Settlement (the "Stipulation") dated November 8, 2024, Declaration of Jonathan Stern in Support of Lead Plaintiff's Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff (the "Stern Declaration" or "Stern Decl.") filed concurrently with this motion, or the Amended Complaint (Dkt. No. 51).

1

needle made smaller and smaller over the years by judicial decree and congressional action.").[2] Moreover, even if Lead Plaintiff were to win at trial, there was a strong possibility that the case would yield little or no recovery after years of costly litigation. Despite these risks, Lead Counsel and Levi & Korsinsky worked 1987.08 hours over the course of more than two years, all on a contingency basis with no guarantee of ever being paid.

As compensation for their significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully requests a fee award in the amount of one-third of the Settlement Fund. The requested fee is consistent with attorney fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Lead Counsel's lodestar. Indeed, the requested fee represents a multiplier of 1.2 of Lead Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with substantial contingency risks such as this one. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

Lead Counsel also seek reimbursement of $122,022.28 in out-of-pocket litigation expenses incurred by Lead Counsel in prosecuting the Action. This amount is well below the $250,000 limit on litigation expenses disclosed in the Long Notice and it equates to less than 2% of the Settlement Fund. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action.  Accordingly, this request should be approved.

Finally, Lead Plaintiff respectfully requests a PSLRA award in the amount of $10,000 to compensate it for the time and effort it expended on behalf of the Settlement Class. As detailed in its declaration, Lead Plaintiff, *inter alia*, conducted its own independent research for the case,

---

[2] Unless otherwise noted, citations and quotations are omitted and emphasis is added.

reviewed filings, conferred with Lead Counsel about litigation and settlement strategies, and authorized Lead Counsel to settle the case. But for its "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Stern Declaration, Lead Counsel respectfully requests that the Court award Lead Counsel one-third of the Settlement Fund, approve reimbursement of $122,022.28 in litigation expenses, and grant a PSLRA award of $10,000 to Lead Plaintiff.[3]

## II.   FACTUAL AND PROCEDURAL HISTORY

The concurrently filed Stern Declaration is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to Settlement; the risks and uncertainties of continued litigation; and a description of the services Lead Counsel provided for the benefit of the Settlement Class.[4]

## III.   ARGUMENT

### A.   The Common Fund Doctrine Applies to the Settlement

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust

---

[3] As of the filing of this motion, no member of the Settlement Class has objected to the request for attorney's fees, expenses, a PSLRA award, or any other aspect of the Settlement. If there are any objections prior to the March 21, 2025 deadline, Lead Plaintiff will address them in its reply brief.

[4] All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to, the Stern Decl.

enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Id.*, at *2; *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All of these elements are present here. Lead Counsel's efforts conferred a substantial benefit—$4.75 million in cash alone—on an ascertainable class. And, a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the Settlement, *i.e.*, the Settlement Class. Accordingly, the Court should award attorneys' fees from the Settlement Fund. *See Maley*, 186 F. Supp. 2d at 369.

**B.    The Court Should Award a Reasonable Percentage of the Common Fund**

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees." *Goldberger*, 209 F.3d at 50. However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a

powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC,* 2015 WL 993038, at *2 (S.D.N.Y. 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method… which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'").[5] The percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).[6]

The percentage method does not, however, render the lodestar irrelevant. Rather, the reasonableness inquiry includes a comparison of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d

---

[5] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

[6] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 WL 4357376, at \*14-15 (S.D.N.Y. Sept. 16, 2011).

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at \*6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at \*10.

### C.      The Requested Attorneys' Fees Are Reasonable

#### 1.      The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Fund Method

The one-third fee requested by Lead Counsel is well within the range of percentage fees that courts in the Second Circuit have awarded in comparable, complex class actions.  *See Maley*, 186 F. Supp. 2d at 370 (finding a one-third fee request of settlement fund valued at $11.5 million "falls comfortably within the range of fees typically awarded in securities class actions"); $2.5; *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at \*4 (S.D.N.Y., 2024) (awarding one third of the $2.5 million award); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million"); *Too v. Rockwell Medical, Inc.*, 2020 WL 1026410, at \*3 (E.D.N.Y. Feb. 26, 2020) (awarding one-third of $3.7 million settlement fund prior to formal discovery); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717, at \*1 (E.D.N.Y. Sept. 10, 2021) (awarding attorneys' fees of one-third of $4.9 million partial settlement); *Khait v. Whirlpool Corp.*,

2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *Kristal v. Mesoblast Ltd.*, 2022 WL 3442535, at *1 (S.D.N.Y. Aug. 15, 2022) (awarding attorneys' fees of one-third of $2 million settlement); *In re Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of one-third of $7.5 million, finding that it is "consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries") (citing cases); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (collecting cases and stating that "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.,* where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) (awarding one-third of $7.5 million settlement); *Hayes v. Harmony Gold Mining Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding one-third of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 SAS, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations").

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel gained sufficient information concerning the strengths and weaknesses of the case necessary to make an

7

informed decision about the value of the claims, and further costly litigation would most likely have yielded a diminished recovery. Under such circumstances, Lead Counsel should be rewarded for their efficient and effective advocacy. *See Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (awarding a 33% fee, equating to a multiplier of 5.1, where settlement was reached after consolidated amended complaint was filed and noting that Plaintiff's Counsel should not be "penalize[d] . . . for achieving an early settlement, particular where . . . the settlement amount is substantial."); *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet."); *Monzon*, 2015 WL 993038, at *2 (awarding one-third of the settlement fund and noting that the "percentage of the fund method in common fund cases like this one … directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources.").

**2.      The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee**

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their a reasonable and hourly rate, and totaling the amounts for all time-keepers.[7] Additionally, "[u]nder the lodestar method of

---

[7] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)

fee computation, a multiplier is typically applied to the lodestar. The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Here, Lead Counsel and former Lead Counsel Levi & Korsinsky[8] (together "Plaintiff's Counsel) devoted a total of 1987.08 hours to the prosecution of the Action, resulting in a lodestar of $1,932,793.60. ¶69.[9]  Based on a one-third fee (equal to $2,337,882.66)[10], Plaintiff's Counsel's lodestar yields a multiplier of 1.2. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007)

---

("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

[8] While Levi & Korsinsky are no longer Co-Lead Counsel in this action, their work prior to their withdrawal in this action contributed to Plaintiff's prosecution of this matter.

[9] The Rosen Law Firm does not bill clients hourly. To calculate reasonable hourly rates for lodestar calculation purposes the Rosen Law Firm relied on rates actually approved by bankruptcy courts in 2023. Ex. 4, ¶5. Lead Counsel's rates for attorneys who worked on this litigation range from $1,273 to $1,512 for partners and $491.87 to $1,169 for non-partners (¶79), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015).

[10] This fee estimate is based on a bitcoin value of $90,545.92 as of March 6, 2025.

(finding a 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases).[11]

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar. Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

**D.      The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable**

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

---

[11] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of "between four and five"); *Guevoura Fund Ltd.*, 2019 WL 6889901, at *18 ("multipliers of between three and four times…have been routinely awarded in this Circuit."); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable."); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar").

### 1.    Time and Labor Expended Support the Requested Fee

The time and effort Lead Counsel expended in prosecuting this Action and achieving the Settlement supports the requested fee.  As set forth in greater detail in the Stern Declaration, Lead Counsel, among other things:

- a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company;

- engaging a damages and causation expert;

- defeating, in part, the Underwriter and Stronghold Motions to Dismiss;

- commencing in discovery, including the review of more than 10,000 pages of documents;

- drafted and served document requests on Defendants and met and conferred multiple times with Defense Counsel about their responses and objections to those document requests;

- negotiated a protective order with Defense Counsel;

- drafted an Electronically Stored Information ("ESI") Protocol and met and conferred with Defense Counsel about it multiple times;

- preparing the Class Certification Motion;

- engaging in arm's-length negotiations between experienced counsel with the assistance of a well-respected Mediator.

- drafted and negotiated a settlement term sheet, the Stipulation (including the exhibits thereto), and Supplemental Agreement with Defendants;

11

- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly;

- drafted the preliminary approval motion;

- oversaw the implementation of the notice process to Settlement Class Members; and

- drafted the motion for final approval.

It is also important to recognize that the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution motion.  No additional compensation will be sought for this work.  *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

### 2.    The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] 'perhaps the foremost' factor to be considered in determining" a reasonable award of attorneys' fees.  *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a

12

contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 467 (quoting *Goldberger*, 209 F.3d at 55). The many severe risks that Lead Counsel faced in prosecuting this suit more than justify the requested one-third fee. *See, e.g.*, ¶¶33-41.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010).[12] This case was no exception. From the outset of the Action, Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case … ." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel

---

[12] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Lead Counsel] have not been compensated for any time or expenses since this case began …" *Flag Telecom*, 2010 WL 4537550, at *27. Lead Counsel's commitment was significant (*i.e.*, $1,451,790 in lodestar and $34,762.10 in out-of-pocket hard costs), and had they not obtained a recovery, it would have all been lost.

While Lead Counsel believe that Lead Plaintiff's claims are meritorious and remain confident in their ability to prove their claims and rebut any potential arguments advanced by Defendants, they also recognize that there were a number of substantial risks in the litigation and that Lead Plaintiff's ability to succeed at trial and obtain and collect a substantial judgment was far from certain. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

In particular, although the alleged misstatements that Lead Plaintiff pled in the Amended Complaint survived Defendants' motion to dismiss, to survive a summary judgment motion, Lead Plaintiff would need to prove — not merely allege — that Stronghold's registration statement contained false and misleading statements. Additionally, Lead Plaintiff expected Defendants to continue to pursue their negative causation defense on summary judgment. ¶34. Furthermore, even if it survived summary judgment, Lead Plaintiff would then have to establish each element of its claims and refute Defendants' affirmative defenses to a jury's satisfaction. And if Lead Plaintiff won at trial, it would have to survive Defendants' inevitable appeals.

Additionally, litigating damages presents a significant risk in securities class actions. In securities class actions, "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion ... .'" *Global Crossing*, 225 F.R.D. at 459; *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (in securities class actions, the "complexities of calculating damages increase geometrically"). "There is the undeniable risk that a 'jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses.'" *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

The statutory measure of damages under Section 11 is the difference between the IPO price for Stronghold Class A common stock and the price on the date this suit was filed. 15 U.S.C. § 77k(e). Here, during the IPO the Company sold 7,690,400 shares of Class A common stock at a price of $19.00 per share. Settling Defendants argue that before any alleged misrepresentation was revealed to the market, Stronghold's stock price had already dropped nearly 50% from its $19.00 IPO price due to reasons unrelated to this Action. ¶40. Section 11 of the Securities Act, however, provides a negative causation defense under which defendants can reduce the amount of damages by establishing that "the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement." *See McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995). Defendants would point to the fact that there was as increase in price two days after the initial November 30, 2021 disclosure. In particular, Defendants would argue that after the disclosure Stronghold's stock increased from 17.24/share to $19.79/share to support their negative causation argument.

15

Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. And if Defendants' arguments were accepted, the maximum damages that could be established at trial might have been even lower and, of course, Lead Plaintiff may have lost at summary judgment, trial, or an appeal on some or all of his claims, resulting in a recovery of little or nothing. The Settlement avoids these genuine risks. Furthermore, even if Lead Plaintiff overcame all of these risks and prevailed at trial for the full amount of damages, he would still face the risk of an adverse decision on post-trial motions or reversal on appeal.[13]

Additionally, as a practical matter continued litigation of the Action would only further shrink the pot from which the Settlement Class could recover. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *8 (S.D.N.Y. 2014) ("The Settlement avoids the risk that further litigation would have resulted in a lesser recovery even if Plaintiff prevailed on the merits because defense costs would have significantly depleted, if not exhausted, the available D & O Policy.").

In sum, Lead Plaintiff faced substantial risks with continued litigation. While Lead Plaintiff and its counsel believe this case has merit and that they could have successfully navigated each risk presented, the risks remained. If any of them materialized, the Settlement Class might have recovered far less than the proposed Settlement or nothing at all. In the context of all those risks, the $4.75 million 25 Bitcoin Settlement is a highly favorable result for the Settlement Class, and Lead Counsel's ability to obtain that result despite so many risks supports the reasonableness of

---

[13] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following jury verdict in plaintiffs' favor), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

the fee request. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3.   The Magnitude and Complexity of the Action Supports the Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

To build and settle the case, Lead Counsel, among other things, needed to: (1)   a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company; (2) engaging a damages and causation expert; (3) defeating, in part, the Underwriter and Stronghold Motions to Dismiss; (4) commencing in discovery, including the review of more than 10,000 pages of documents; (5) drafted and served document requests on Defendants and met and conferred multiple times with Defense Counsel about their responses and objections to those document requests; (6) negotiated a protective order with Defense Counsel; (7) drafted an ESI Protocol and met and conferred with Defense Counsel about it multiple times; (8) preparing the Class Certification Motion; (9) engaging in arm's-length negotiations between experienced counsel with the assistance of a well-respected Mediator; (10) drafted and negotiated a settlement term sheet, the Stipulation (including the exhibits thereto), and Supplemental Agreement with Defendants; (11) worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly;

17

(12) drafted the preliminary approval motion; (13) oversaw the implementation of the notice process to Settlement Class Members; and (14) drafted the motion for final approval. ¶67. Accordingly, this was a complex matter.

Similarly, the magnitude of the Action is unquestionable. Millions of dollars of damages were at stake, and the case required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the requested fee. *See City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Representation Supports the Requested Fee

Lead Counsel respectfully submits that the quality of representation the Settlement Class received is best evidenced by the result obtained. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 467 ("The quality of Securities Lead Counsel's representation is evidenced by the recovery obtained for the Securities Class . . . ."); *Veeco*, 2007 WL 4115808, at *7 ("the quality of the representation of Plaintiffs' Counsel is best evidenced by the result."). Here, the proposed Settlement provides an immediate cash payment of four million seven hundred and fifty thousand ($4.75 million) in cash and the US dollar value of 25 Bitcoins[14], for the benefit of the Settlement Class. Based on a

---

[14] Per the Stipulation, ¶6, Stronghold is required make the cash value of bitcoin payments according to the following schedule: the US dollar value of 25 Bitcoins according to the following schedule: (1) the US dollar value of one Bitcoin on the third business day of the month following Preliminary Approval, (2) the US dollar value of one Bitcoin on the third business day of every month for each of the twenty-two months immediately following the first Bitcoin payment, (3) on the third business day of the 24th month following Preliminary Approval, the US dollar value of 2 Bitcoins. Stronghold has made the February and March payments as required in the stipulation. Due to the timing of the holidays, Stronghold was delayed in making the January 2025 payment. The parties have conferred on this matter and Stronghold has assured Plaintiffs they anticipating making the January payment by next week, and in any event no later than April 3, 2025. On

$86.638.78 valuation of Bitcoin, this represents a $6,915,969.50 recovery. This is a highly favorable result in light of the significant risks of continued litigation. Plaintiff's damages expert estimated a maximum of $97 million recoverable in statutory damages, and $54.3 million assuming Plaintiffs can only recover on statistically significant drops related to the misstatements. The Settlement therefore offers a recovery of more than 7.1%[15] of the maximum statutory damages, and 12.7% of damages only using statistically significant drops. According to Cornerstone Research, the median recovery in cases alleging Section 11 claims was approximately 7.5% of statutory damages between 2014 and 2023.[16] The result looks even more favorable when one considers, as discussed in the previous section, that Defendants will argue that the absolute maximum statutory damages still available in this case is actually approximately $5.5 million. The Settlement represents a recovery of more than 100% of those damages. The recovery here is well above recoveries courts have declared reasonable. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving

February 27, 2025, Stronghold announced that its shareholders approved a merger with the larger bitcoin mining company Bitfarms Ltd., which trades under Nasdaq and the Toronto Stock Exchange under the symbol TSX. Stronghold's merger with a larger Bitcoin mining company ensures its financial stability and therefore its ability to continue to make payments required under the Stipulation.

[15] The Motion for Preliminary Approval inadvertently stated that the recovery was 8.2% of maximum recoverable damages due to a calculation error.

[16] Cornerstone Research: Securities Class Action Settlements, 2023 Review and Analysis *available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf

$2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million.").

This result is even more impressive when juxtaposed against the significant hurdles Lead Plaintiff would need to overcome in order to prevail in this complex securities fraud litigation and the limited funds available to settle the case. *See EVCI*, 2007 WL 2230177, at \*17 ("Given the Company's limited financial wherewithal and the wasting nature of its insurance policies, Lead Counsel maximized the Class's recovery.").

Additionally, the quality of Lead Counsel's efforts and commitment to providing the Settlement Class with the best possible representation, together with their substantial experience in securities class actions provided leverage necessary to negotiate the Settlement. *See* Ex. 4-A (Rosen Law resume). Courts around the country have recognized the quality of Rosen Law's work, showing that Rosen Law understands the intricacies inherent in litigating actions against such defendants. *See Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million securities settlement against Chinese company Alibaba, the Court stated that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case . . ."); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) (holding that "[T]he Rosen Law firm is well-qualified to serve as lead counsel"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) (holding that "[t]he Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 242 (E.D.N.Y. 2011) ("the Rosen Law Firm is well-qualified to serve as lead counsel in this matter"); *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at \*4 (E.D.N.Y. Jan. 6, 2021) ("The Rosen Law Firm, P.A . . . [is] capable and experienced in class litigation."). Moreover, Mr. Danilow recognized that "all sides litigated the

20

action in a vigorous, professional, and thorough manner. It was also clear to me that both sides were well-prepared and fully capable of proceeding to a judicial resolution if a settlement could not be achieved." Ex. 1, (Danilow Decl.) at ¶13. Thus, Lead Counsel's experience and reputation contributed to this successful resolution.

The quality of the opposition faced by Lead Counsel should also be taken into account. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were vigorously represented by highly skilled securities practitioners from Tannenbaum Helpern Syracuse, & Hirschritt LLP, Willkie Farr & Gallagher LLP, and Faegre Drinker Biddle & Reath LLP. ¶81. Notwithstanding this capable opposition, Lead Counsel obtained an extremely favorable Settlement. Consequently, this factor militates in favor of the requested fee.

### 5.      The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III.C.1, *supra*, the requested one-third fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.     Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373.  This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors.  "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).  If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.  As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them.  This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees 'that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.'").

### E.     Lead Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel also request reimbursement of $122,022.28 in expenses incurred while prosecuting the Action.  *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y.

22

2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."). The expenses were incurred for professional services rendered by Lead Plaintiff's damages experts and investigators, costs of mediation, legal and factual research, service of process, and other expenses incurred in the course of the litigation. ¶¶88-91. These expenses were critical to Lead Plaintiff's success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, they should be reimbursed. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). Additionally, the amount requested is below the $250,000, limit disclosed in the Long Notice. ¶89; Ex. 2-B (Long Notice).

**F.     Lead Plaintiff Should be Awarded His Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)**

In connection with their request for reimbursement of litigation expenses, Lead Counsel also respectfully request an award of $10,000 to Lead Plaintiff for its time spent prosecuting the Action. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

As detailed in the Declaration of Allegheny County Employees Retirement System ("ACERS Decl."), attached as Exhibit 3 to the Stern Decl., Lead Plaintiff spent over 20 hours devoted to the Action. ACERS Decl., ¶¶2, 9. As the Lead Plaintiff, it took an active role in the litigation by, among other things: (a) initiating this Action and moving to be appointed as Lead

23

Plaintiff; (b) regularly communicating with his attorneys regarding the posture and progress of the case, as well as strategy; (c) conducting its own research and investigation and providing and discussing it findings with this attorneys; (d) producing documents to it attorneys; (e) reviewing all significant pleadings and memoranda; (f) consulting with its attorneys regarding the settlement negotiations; and (g) evaluating and approving the proposed Settlement. *Id*. at ¶4. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Marsh & McLennan*, 2009 WL 5178546, at *21.

Consequently, Lead Counsel respectfully requests that the Court grant Lead Plaintiff's requests for reimbursement of his "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Marsh & McLennan*, 2009 WL 5178546, at *21 (approving $215,000 total award to two lead plaintiffs); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class"); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *In re Signet Jewelers Limited Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff); *Anwar*, 2012 WL 1981505, at *3 (awarding $25,000 in total to two lead plaintiffs). Accordingly, the request of the Award to Lead Plaintiff is reasonable.

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (a) award

Lead Counsel their reasonable attorneys' fees in the total amount of one-third of the Settlement Amount, plus interest; (b) reimburse Lead Counsel for expenses and costs in the amount of $122,022.28, plus interest; and (c) reimburse Lead Plaintiff for its time spent on the Action in the amount of $10,000.

Dated: March 7, 2025                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**


                                        /s/ Jonathan Stern
                                        Laurence Rosen
                                        Jonathan Stern
                                        Phillip C. Kim
                                        The Rosen Law Firm, P.A.
                                        275 Madison Avenue, 40th Fl.
                                        New York, New York 10016

                                        *Counsel for Plaintiff and the Settlement Class*

25

**CERTIFICATE OF WORD COUNT PURSUANT TO LR 7.1(c)**

I, Jonathan Stern, certify that the foregoing Memorandum of Law in Support of Plaintiffs'

Motion for Fees and Expenses complies with LR 7.1(c). I further certify that the above referenced

memorandum contains 8,015 words.

/s/ Jonathan Stern
Jonathan Stern