**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK WINTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STRONGHOLD DIGITAL MINING, INC., GREGORY A. BEARD, RICARDO R. A LARROUDÉ, WILLIAM B. SPENCE, B. RILEY SECURITIES, INC., COWEN AND COMPANY, LLC, TUDOR, PICKERING, HOLT & CO. SECURITIES, LLC, D.A. DAVIDSON & CO., COMPASS POINT RESEARCH & TRADING, LLC, and NORTHLAND SECURITIES, INC.,<br><br>Defendants. | Case No. 1:22-cv-03088-RA |

**DECLARATION OF JONATHAN STERN IN SUPPORT OF THE MOTIONS FOR: (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO LEAD PLAINTIFF**

**TABLE OF EXHIBITS TO DECLARATION**

| EXHIBIT | TITLE |
|---|---|
| 1 | Declaration of Greg Danilow |
| 2 | Declaration of Sarah Evans Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 3 | Declaration of Lead Plaintiff Allegheny County Employees Retirement System |
| 4 | Declaration of Jonathan Stern on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses |
| 5 | Declaration of Shannon Hopkins on behalf of Levi & Korsinsky, LLP Concerning Attorneys' Fees and Expenses |

I, Jonathan Stern, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1.      I am a Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Allegheny County Employees Retirement System ("Lead Plaintiff" or "ACERS"). I conducted the day-to-day activities in the Action.[1] I am familiar with the proceedings in this litigation, and I have personal knowledge of the matters set forth herein based upon participating in all aspects of the Action.

2.      I respectfully submit this declaration, together with the attached exhibits, in support of Lead Plaintiff's Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff. As set forth in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Memorandum"), Lead Plaintiff seeks final approval of the four million seven hundred and fifty thousand ($4.75 million) and the US dollar value of 25 Bitcoins Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.[2]

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Stipulation of Settlement (the "Stipulation") dated November 8, 2024 (Dkt. No. 121), or the Amended Complaint (Dkt. No. 51).

[2] The Settlement Class is defined as "all persons and entities who or which purchased or otherwise acquired Stronghold's Class A common stock on or before December 20, 2021, pursuant and/or traceable to the Offering Documents issued in connection with the Class A common stock initial public offering in October 2021 and were damaged thereby. Excluded from the Settlement Class are: (i) Defendants; (ii) Immediate Families of the Individual Defendants; (iii) any person who was an officer, director, or control person of Stronghold and the Underwriter Defendants, (at all relevant times, and members of their Immediate Families); (iv) Stronghold's employee retirement and/or benefit plan(s) and their participants and/or beneficiaries to the extent they purchased or acquired Stronghold's Class A common stock through any such plan(s); (v) any entity in which any Defendant has or had a Controlling Interest; and (vi) the legal representatives, heirs, successors, or assigns of any such excluded person or entity. Also excluded from the Settlement

3.      As set forth in the Memorandum of Law in Support of the Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff ("Fee Memorandum"), Lead Counsel seeks an award of attorneys' fees in the amount of one-third of the Settlement Fund (which, by definition, includes interest accrued thereon), reimbursement of litigation expenses of $122,022.28, plus interest; and an award to Lead Plaintiff not to exceed $10,000 pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for the time devoted to its representation of the Settlement Class.

4.      The Court preliminarily approved the proposed Settlement by Order dated December 16, 2024 (the "Preliminary Approval Order") and thereby directed notice of the Settlement to be disseminated to the Settlement Class.  Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, implemented a comprehensive notice program under Lead Counsel's direction, whereby notice was given to potential Settlement Class Members by mail and/or email and by publication.

5.      In total, SCS notified 51,500 potential Settlement Class Members about the Settlement either by mailed Postcard Notice or emailed links to the Long Notice and Claim Form. To date, no requests for exclusion and no objections have been received.

I.      **INTRODUCTION**

6.      The Action asserts claims pursuant to Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), against Stronghold Digital Mining, Inc. ("Stronghold" or the "Company"), Gregory A. Beard, William B. Spence (together with Stronghold, the "Stronghold Defendants"), B. Riley Securities, Inc., Cowen and Company, LLC, Tudor, Pickering, Holt & Co.

_____

Class will be any Persons who or which exclude themselves from the Settlement Class by submitting a timely and valid request for exclusion that is accepted by the Court.  However, any Investment Vehicle will not be excluded from the Settlement Class." Stipulation ¶1.ll.

2

Securities, LLC, D.A. Davidson & Co., Compass Point Research & Trading, LLC, and Northland Securities, Inc. (collectively, the "Underwriter Defendants"), and Ricardo R. A. Larroudé, (together with the Underwriter Defendants and Stronghold Defendants, the "Settling Defendants").

7.      The proposed Settlement provides for the resolution of all claims against Defendants in exchange for four million seven hundred and fifty thousand ($4.75 million) in cash and the US dollar value of 25 Bitcoins (the "Settlement Amount"). As detailed herein, Lead Plaintiff and Lead Counsel submit that the proposed Settlement represents a highly favorable result for the Settlement Class considering the risks of continued litigation and the risks that Defendants will be unable to pay any judgment and that Lead Plaintiff will not be able to enforce a judgment.

8.      The Settlement was negotiated by experienced counsel, who were well aware of the strengths and weaknesses of the case, including the ability to pay and judgment enforcement issues.

9.      Lead Counsel's efforts in the litigation included, among other things:

- a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company;
- engaging a damages and causation expert;
- defeating, in part, the Underwriter and Stronghold Motions to Dismiss;
- commencing in discovery, including the review of more than 10,000 pages of documents;
- drafted and served document requests on Defendants and met and conferred multiple times with Defense Counsel about their responses and objections to those document requests;
- negotiated a protective order with Defense Counsel;
- drafted an Electronically Stored Information ("ESI") Protocol and met and conferred with Defense Counsel about it multiple times;
- preparing the Class Certification Motion;
- engaging in arm's-length negotiations between experienced counsel with the assistance of a well-respected Mediator.

3

- drafted and negotiated a settlement term sheet, the Stipulation (including the exhibits thereto), and Supplemental Agreement with Defendants;
- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly;
- drafted the preliminary approval motion;
- oversaw the implementation of the notice process to Settlement Class Members; and
- drafted the motion for final approval.

10.    Lead Plaintiff entered into the proposed Settlement only after performing all of the above work, and engaging in a full-day mediation that informed it and Lead Counsel as to the strengths and weaknesses of the case. The Settlement is, therefore, the result of arm's length negotiations between and among well-informed, highly experienced counsel.

11.    Based on the foregoing efforts, Lead Plaintiff and Lead Counsel believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of its members. For all the reasons set forth herein and in the accompanying memoranda and declarations, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

12.    In addition, Lead Plaintiff seeks approval of the proposed Plan of Allocation as fair and reasonable. As discussed in further detail below, Lead Counsel developed the Plan of Allocation with the assistance of Lead Plaintiff's damages consultant. The Plan of Allocation provides for the distribution of the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis based on their Recognized Loss amounts, and similar plans have been repeatedly approved by the courts.

13.    Finally, Lead Plaintiff seeks approval of Lead Counsel's request for attorneys' fees, reimbursement of litigation expenses, and Award to Lead Plaintiff.  As discussed in detail in the

4

accompanying Fee Memorandum, the requested one-third fee is well within the range of percentage awards granted by courts in this Circuit in comparable securities class actions. Additionally, the fairness and reasonableness of the request is confirmed by a lodestar cross-check, and warranted in light of the extent and quality of the work performed and the substantial result achieved. Likewise, the requested out-of-pocket litigation costs of $122,022.28 is also fair and reasonable. Accordingly, for the reasons set forth in the Fee Memorandum and for the additional reasons set forth herein, Lead Counsel respectfully submits that the request for attorneys' fees and reimbursement of Litigation Expenses should be approved.

## II.    PROSECUTION OF THE ACTION

### A.    Factual Background

14.    Lead Plaintiff alleges that Defendants violated the federal securities laws by making false and misleading statements about Stronghold's risks, as it knew that its largest supplier, would not be able to fulfill their orders. Stronghold IPO Offering Documents.

### B.    Procedural Background.

15.    On July 27, 2021, the Company filed with the SEC its first registration statement to sell shares of the Company in its Initial Public Offering ("IPO"). After several amendments to this registration statement (Registration No. 333-258188), on October 19, 2021, the Company filed with the SEC its final amendment to the Registration Statement, which the SEC declared effective that same day.

16.    On October 21, 2021, Stronghold filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 7,690,400 shares of Class A common stock at a price of $19.00 per share. The Company received net proceeds of approximately $132.5 million from the IPO. The proceeds from the IPO were purportedly to be

contributed to Stronghold LLC in exchange for Stronghold LLC Units, and Stronghold LLC would purportedly use the net proceeds for general corporate purposes, including for acquisitions of miners and power generating assets.

17.    On April 14, 2022, Mark Winter filed a shareholder action against Defendants, alleging violations of Section 11 and 15 of the Securities Act of 1933 ("Securities Act") relating to Stronghold's October 21, 2021 IPO. Dkt. No. 1. By Order dated August 4, 2022, the Court appointed Plaintiff and Gulzar Ahmed as Co-Lead Plaintiffs, ("Co-Lead Plaintiffs") and accordingly, appointed The Rosen Law Firm, P.A. and Levi & Korsinsky, LLP as Co-Lead Counsel. Dkt. No. 41.

18.    On October 18, 2022, Co-Lead Plaintiffs filed their Amended Complaint. Dkt. No. 51.

19.    On December 19, 2022 the Stronghold Defendants filed a Motion to Dismiss Co-Lead Plaintiffs' Amended Complaint ("Stronghold MTD"). This motion was joined by Defendant Ricardo R. A. Larroudé, on December 19, 2022, Dkt. No. 57, and was fully briefed by March 20, 2023. Dkt. Nos. 54. (Stronghold MTD), 65 (Co-Lead Plaintiffs' opposition), and 70 (Stronghold Defendants' Reply)[3].

20.    Parallel to this, on December 19, 2022, the Underwriter Defendants filed a separate Motion to Dismiss Co-Lead Plaintiffs' Amended Complaint ("Underwriter MTD"), which was fully briefed on March 20, 2023. Dkt. Nos. 58 (Underwriter MTD), 67 (Co-Lead Plaintiffs' opposition), and 71 (Underwriter Defendants' Reply).

21.    On August 10, 2023, the Court ruled on both the Underwriter MTD and Stronghold MTD denying both Motions to Dismiss, except as to Plaintiff Gulzar Ahmed's Section 12(a)(2)

---

[3] On March 20, 2023, Defendant Ricardo R. A. Larroudé joined the Stronghold MTD Reply. Dkt. No. 72.

claims. Dkt. No. 77.

22.    On September 8, 2023, the Court issued a Case Management Plan and Scheduling Order directing that Co-Lead Plaintiffs' motion for class certification was to be filed no later than February 19, 2024, that Defendants' opposition to certification was due no later than June 10, 2024, and Co-Lead Plaintiffs' reply was due no later than August 19, 2024. Dkt. No. 87.

23.    Settling Defendants joined the Action by filing their answers on October 9, 2024. Dkt. Nos. 89 (Answer of Stronghold Defendants), 90 (Answer of Ricardo Larroudé), and 91 (Answer of Underwriter Defendants.).

24.    On January 16, 2024, Gulzar Ahmed filed a motion to withdraw as co-lead plaintiff due to personal health issues. Dkt. No. 98. The Court granted the motion to withdraw on January 19, 2024, leaving Plaintiff as the sole Lead Plaintiff in the action. Dkt. No. 99.

25.    On February 19, 2024, Lead Plaintiff moved for class certification and Appointment of Class Representatives and Class Counsel. Dkt. No. 100. The class certification motion was assigned to Magistrate Judge Gary Stein for a report and recommendation. Dkt. No. 103. By Order dated June 17, 2024, the Stronghold Defendants stipulated and consented to the substitution of the law firm Tannenbaum Helpern Syracuse & Hirschtritt LLP as their sole attorneys of record in place of the law firm Vinson & Elkins.

**C.    Settlement Negotiations and the Settlement's Preliminary Approval**

26.    Plaintiff, the Stronghold Defendants, the Underwriter Defendants, and Defendant Ricardo R. A. Larroudé engaged Greg Danilow (the "Mediator" or "Danilow") of Phillips ADR, a well-respected and experienced mediator, to assist them in exploring a potential negotiated resolution of the claims against Defendants. On March 26, 2024, counsel for Plaintiff, Stronghold Defendants, the Underwriter Defendants, and Defendant Ricardo R. A. Larroudé, met with the Mediator in an attempt to reach a settlement. The mediation involved an extended effort to settle

7

the claims and was preceded by the exchange of mediation statements and materials. While these discussions narrowed the differences between the parties, they did not result in a resolution of the Action.

27.    Between March 26, 2024 and July 18, 2024, Plaintiff and Settling Defendants continued to negotiate at arm's-length, with the assistance of the Mediator, a resolution of the Action and conducted a second mediation on July 18, 2024. The parties have reached an agreement to settle all claims in the Action and had signed a confidential memorandum of understanding reflecting that agreement. Exhibit 1, Declaration of Greg Danilow ("Danilow Decl"), at ¶13. Additionally, Mr. Danilow concluded "that all sides litigated the action in a vigorous, professional, and thorough manner. It was also clear to me that both sides were well-prepared and fully capable of proceeding to a judicial resolution if a settlement could not be achieved." *Id.*

28.    Shortly after that acceptance of the mediator's proposal, the parties negotiated and agreed to a term sheet.

29.    Following additional negotiations, the Parties exchanged multiple drafts of—and ultimately executed—the Stipulation and Lead Plaintiff filed its Unopposed Motion for Entry of Order Preliminarily Approving Settlement and Establishing Notice Procedures (Dkt. Nos. 119-121).

30.    On December 16, 2024, the Court entered the Preliminary Approval Order. (Dkt. No. 125).

## III.    THE RISKS OF CONTINUED LITIGATION

31.    The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a payment of four million seven hundred and fifty thousand ($4.75 million) in cash and the US dollar value of 25 Bitcoins, calculated pursuant to the formula set forth in Paragraph 6

of the Stipulation. As explained more fully below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case were to proceed through additional litigation to a jury trial, followed by the inevitable appeals. Prior to trial and appeal, Lead Plaintiff faced significant litigation risks. In addition, there were concerns related to Defendants' ability to pay and Lead Plaintiff's ability to enforce a judgment. Thus, there was no guarantee that Lead Plaintiff and the Settlement Class would later achieve any recovery, let alone one greater than the Settlement Amount.

### A.    The Complexity, Expense and Duration of Litigation

32.    In the absence of the Settlement, the Action would have required extensive fact and expert discovery, as well as, litigating a class certification motion, summary judgment motions, and *Daubert* motions, followed by proving Lead Plaintiff's claims at trial, post-trial motions, and appeals.

### B.    Risks to Proving Liability and Damages

33.    Protracted litigation posed several risks for Stronghold investors. First, although the Court denied the Motion to Dismiss against Plaintiff, Plaintiff would have faced significant hurdles in connection with ultimately proving falsity and materiality which is necessary for its Securities Act claims. Moreover, Plaintiff would have to succeed on its pending Class Certification Motion and anticipated summary judgment motions. Indeed, Settling Defendants have not yet submitted their opposition to Plaintiff's Class Certification Motion.

34.    Furthermore, even if Plaintiff overcomes the hurdles to establishing liability and to recover funds from Settling Defendants, Plaintiff would have to convince a jury to accept their damages calculation. Plaintiff's expert estimated that maximum damages are approximately $97 million. However, this "best case" scenario is subject to attack if Defendants were able to

9

disaggregate other confounding factors which may have impacted the stock declines or establish a negative causation defense. In their Motions to Dismiss, Settling Defendants argue that before any alleged misrepresentation was revealed to the market, Stronghold's stock price had already dropped nearly *50%* from its $19.00 IPO price due to reasons unrelated to this Action. In continuing to argue that Plaintiff was not damaged at all by the alleged misstatements, Defendants would point to the fact that there was as increase in price two days after the initial November 30, 2021 disclosure. In particular, Defendants would argue that after the disclosure Stronghold's stock increased from $17.24/share to $19.79/share to support their negative causation argument.

35.     Moreover, if damages were ultimately contested, both sides would have used experts to support their respective positions. The inevitable "battle of the experts" at class certification, summary judgment, and trial creates substantial litigation risk because there can be no assurance as to which party's expert a jury will find more persuasive.

### C.     Risks of Maintaining Class Status

36.     If litigation were to continue, Defendants would have opposed class certification. While Lead Counsel believe that Rule 23's requirements would have been satisfied and a class would be certified, Lead Plaintiff bears the burden of proof on class certification and Defendants would have undoubtedly raised arguments challenging the propriety of class certification. Moreover, even if Lead Plaintiff successfully obtained class certification, Defendants could have sought permission from the Second Circuit to appeal any class certification order under Federal Rule of Civil Procedure 23(f), further delaying or precluding any potential recovery. Additionally, even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. Class certification was, by no means, a forgone conclusion.

**D.      Other Risks, Including Trial and Appeals, and Ability to Collect a Judgment**

37.      Complex litigation, like this Action, is uncertain and success is never guaranteed. Lead Plaintiff would have had to prevail at several stages of litigation, each of which would have presented significant risks in complex class actions such as this one.  Lead Counsel knows from experience that despite the most vigorous and competent efforts, success in complex litigation such as this case is never assured.

38.      Even if Lead Plaintiff succeeded in proving all elements of its case at trial and obtained a jury verdict, Defendants would almost certainly have appealed. An appeal not only would have renewed all the risks Lead Plaintiff faced—as Defendants would have reasserted all their arguments summarized above—but also would have resulted in significant additional delay. Given these significant litigation risks, Lead Plaintiff and Lead Counsel believe that the Settlement represents a highly favorable result for the Settlement Class.

39.      Accordingly, if the case was litigated and if Lead Plaintiff prevailed, it is likely that the Settlement Class would have received less money than provided for in the Settlement. If a settlement had not been reached, Defendants would have continued to use the D&O policy funds to mount their defense and this would have eroded the amount of funds available for investors.

**E.      The Settlement is Reasonable in Light of the Maximum Potential Recovery**

40.      Even if liability were established, Plaintiff's expert has estimated class wide maximum aggregate damages at $97 million or $5.5 million considering Defendants' negative causation arguments. The Settlement, therefore, represents approximately 7.1% of the total maximum recoverable damages or approximately a full recovery after considering Defendants' defenses. The recovery is, therefore, significantly above average. According to Cornerstone Research, the median recovery in cases alleging Section 11 claims was approximately 7.5% of

11

statutory damages between 2014 and 2023. In light of these circumstances and all of the delay and uncertainty that would be inherent in continued litigation, the Settlement falls well within the range of possible recovery considered fair, reasonable and adequate. Exhibit 7 (Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis* (Cornerstone Research 2023)) at 7-8.

41.     Having evaluated the relative strengths and weaknesses of the Action in light of Defendants' arguments, and considering the very real risks presented by continued litigation, it is our informed judgment, based on all of the proceedings to date and our extensive experience in litigating class actions under the federal securities laws, that the proposed Settlement is fair, reasonable, and adequate and in the Settlement Class's best interest.

## IV.     LEAD PLAINTIFF'S COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF THE NOTICE

42.     The Preliminary Approval Order directed that SCS, under Lead Counsel's direction, to: (i) email links to the Long Notice and Claim Form on SCS's website to Settlement Class Members for whom SCS was able to obtain email addresses; (ii) mail the Postcard Notice to Settlement Class Members if no email address could be obtained identified with reasonable effort; and (iii) publish the Summary Notice.

43.     The Court also set a deadline of March 21, 2025 (21 calendar days prior to the Settlement Hearing) for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum or to request exclusion from the Settlement Class, and scheduled the Settlement Hearing for April 11, 2025 at 2:00 p.m.

44.     Contemporaneously with the dissemination of the notices, Lead Counsel instructed SCS to post downloadable copies of the Long Notice and Claim Form online at https://www.strategicclaims.net/Stronghold (the "Settlement Website").   The notices directed

12

Settlement Class Members to the Settlement Website in order to obtain additional information on the Settlement, including how to file a claim, request exclusion or object to the Settlement, and access the Long Notice and Claim Form.

45.    The Court-approved Long Notice disclosed, among other things, the following information to Settlement Class Members: (a) a summary of the Settlement, including the four million seven hundred and fifty thousand ($4.75 million) and the US dollar value of 25 Bitcoins, Settlement Amount; (b) the proposed Plan of Allocation; (c) that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Amount, reimbursement of litigation expenses in an amount not to exceed $250,000, plus interest, and; an award to Lead Plaintiff not to exceed $10,000; (d) that any Settlement Class Member could object to the requested attorneys' fees, reimbursement of the litigation expenses and Award to Lead Plaintiff; (e) an explanation of the reasons for the Settlement; (f) that requests for exclusion from the Settlement must be submitted to the Claims Administrator no later than March 21, 2025; (g) that objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum must be filed with the Court and served on counsel no later than March 21, 2025; and (h) that the deadline for submitting a Claim Form is April 4, 2025.

46.    To disseminate notice, on January 8, 2025, SCS mailed a copy of the Postcard Notice to the organizations identified in the transfer agent records provided to Lead Counsel by Stronghold's counsel.  *See* Declaration of Sarah Evans Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; And (C) Report on Requests for Exclusion and Objections ("Evans Decl."), attached hereto as Exhibit 2 at ¶5, 7.

47.    In addition, SCS maintains a proprietary database with names and addresses of the largest banks, brokerage firms, institutions and other third-party nominees.  On January 8, 2025,

13

SCS caused a letter to be mailed or emailed to the 2449 nominees contained in the SCS master mailing list. *Id.* at ¶5; Ex. 2-C (copy of the letter sent to nominees). The letter directed nominees to: (a) mail the Postcard Notice to their customers who may be beneficial purchasers/owners; (b) email a direct link to the Long Notice and Claim Form supplied by SCS to their beneficial purchasers/owners; or (c) provide SCS with a list of the names, mailing addresses, and email addresses, if available, of such beneficial purchasers/owners so SCS could promptly mail the Postcard Notice or email links to the Long Notice and Claim Form directly to them. *Id* at ¶5.

48.      To date, SCS and nominees have mailed and emailed 51,500 copies of the Postcard Notice to potential Settlement Class Members. *Id.* at ¶6.

49.      On January 20, 2025 in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be published once in *Investor's Business Daily* and to be transmitted over *PR Newswire*. *See id.* at ¶11; Ex. 2-E (confirmations of publications).

50.      Lead Counsel also caused SCS to establish the dedicated Settlement Website, which became operational on January 8, 2025, to provide potential Settlement Class Members with information concerning the Settlement, including exclusion, objection, and claim-filing deadlines for the case; the online claim filing link; the date and time of the Settlement Hearing; and downloadable versions of the Long Notice and Claim Form, as well as copies of the Stipulation and Preliminary Approval Order. *Id.* ¶13.

51.      SCS maintains a toll-free telephone number for potential Settlement Class Members to call and obtain information about the Settlement and/or request a Long Notice and Claim Form. SCS promptly responds to each telephone inquiry and will continue to address potential Settlement Class Members' inquiries. *Id.* at ¶11.

52.    As set forth above, the Long Notice informed potential Settlement Class Members that the deadline to file objections to the Settlement, the proposed Plan of Allocation and/or the Fee Memorandum, or to request exclusion from the Settlement Class, is March 21, 2025.  To date, no requests for exclusion have been received. *Id.* at ¶¶13-14. SCS will file a supplemental affidavit after the March 21, 2025 deadline addressing whether any requests for exclusion have been received.

53.    In addition, to date, no objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum have been entered on this Court's docket or have otherwise been received by Lead Counsel.  Lead Counsel will file reply papers by April 4, 2025 that will address any objections that may be received.

## V.    ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT

54.    Pursuant to the Preliminary Approval Order, and as set forth in the Long Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund (*i.e.*, the $4.75 million in cash and 25 Bitcoins, Settlement Amount, plus any and all interest earned thereon, less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any litigation expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court) must submit a valid Claim Form with all required information either online or postmarked no later than April 4, 2025. The Net Settlement Fund will be distributed among Authorized Claimants according to the proposed Plan of Allocation, subject to Court approval. *See* Dkt. No. 121-3 (Long Notice), at pp. 26-32.  As set forth in the Long Notice, the Net Settlement Fund will be distributed among Settlement Class Members according to the Plan of Allocation approved by the Court.

55.    The proposed Plan of Allocation is detailed in the Long Notice. *See Id*. A downloadable version of the Long Notice is posted online on the Settlement Website. If approved,

the Plan of Allocation will govern how the Net Settlement Fund will be distributed among Authorized Claimants. The Plan of Allocation's objective is to distribute the Net Settlement Fund equitably to those Settlement Class Members who suffered economic losses as a result of the Defendants' wrongful conduct. *See id.*

56. The Plan of Allocation, developed by Lead Plaintiff's damages expert working in conjunction with Lead Counsel, is based on a theory of damages consistent with the securities claims alleged, and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under theories of liability and damages asserted in the Action.

57. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss for each Settlement Class Member's purchases Stronghold Class A common stock the Settlement Class Member purchased or acquired on or before December 20, 2021, pursuant and/or traceable to the Stronghold 2021 IPO.

58. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement — his, her, or its Recognized Loss divided by the total of Recognized Loss of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund and in accordance with each type of claim's allocation. (Dkt. No. 121-3) (Long Notice) at pp. 26-33.

59. An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many Stronghold Class A common stocks the Claimant purchased and sold, when they purchased and sold the shares, the difference between the purchase price of the Stronghold Class A common stocks and the price at which the Settlement Class Member sold them or their price on the date this suit was filed if the Settlement Class Member still held them at that time, and the number of valid claims filed by other claimants.

16

60.     If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Stronghold Class A common stock during the relevant period that Claimant will not recovery any money from the Settlement Fund. *Id.*

61.     If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant. *Id.* (Long Notice) at p. 28; Stipulation ¶6.6. Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated payments are $10.00 or greater. *Id.* In Lead Counsel's experience, processing and sending a check for less than $10.00 is cost-prohibitive.

62.     In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Stronghold Class A common stock that were attributable to the wrongful conduct alleged in the Amended Complaint. Lead Counsel believes that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members similar to the result if Lead Plaintiff prevailed at trial.

63.     To date, no objections to the proposed Plan of Allocation have been received by Lead Counsel, the Claims Administrator, or filed on the Court's docket. *See* Bravata Decl. at ¶14.

## VI.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

64.     In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel is applying for a fee award of one-third of the Class Action Settlement Amount (*i.e.*, $1,583,333.3 cash and 8.3 Bitcoin plus interest). Lead Counsel also request reimbursement of litigation expenses from the Settlement Fund in the amount of $122,022.28. The requested litigation expenses are well below the maximum expense amount of $250,000 forth in the Long Notice, Summary Notice, and Postcard Notice. The legal authorities supporting a one-third fee

award are set forth in the accompanying Fee Memorandum, which is being filed contemporaneously herewith. The primary factual bases for the requested fee and reimbursement of Litigation Expenses are summarized below.

### A.  The Fee Application

65.  Lead Counsel is applying for a percentage-of-the-common-fund fee as compensation for the services they rendered on behalf of the Settlement Class.  As set forth in the accompanying Fee Memorandum, the percentage method is the best method for determining a fair attorneys' fee award, because unlike the lodestar method, it aligns the lawyers' interest with that of the Settlement Class in achieving the maximum recovery.  The lawyers are motivated to achieve maximum recovery in the shortest amount of time required under the circumstances. This paradigm minimizes unnecessary drain on the Court's resources.  Notably, the percentage-of-the-fund method has been recognized as appropriate by the Supreme Court and the Second Circuit for cases of this nature.  Furthermore, as set forth below, though not required in the Second Circuit, Lead Counsel also respectfully submits that the requested fee is fully supported by a "lodestar multiplier cross-check."

66.  Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submits that the requested fee award is fair and reasonable and should be approved.  As discussed in the Fee Memorandum, a one-third fee award is well within the range of percentages awarded in securities class actions with comparable settlements in this Circuit.

### 1.  The Favorable Outcome Achieved is the Result of the Significant Time and Labor That Lead Counsel Devoted to the Action

67.  Lead Counsel spent considerable time prosecuting the Action on behalf of the

18

Settlement Class. Among other things, Lead Counsel:

- a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company;

- engaging a damages and causation expert;

- defeating, in part, the Underwriter and Stronghold Motions to Dismiss;

- commencing in discovery, including the review of more than 10,000 pages of documents;

- drafted and served document requests on Defendants and met and conferred multiple times with Defense Counsel about their responses and objections to those document requests;

- negotiated a protective order with Defense Counsel;

- drafted an ESI Protocol and met and conferred with Defense Counsel about it multiple times;

- preparing the Class Certification Motion;

- engaging in arm's-length negotiations between experienced counsel with the assistance of a well-respected Mediator.

- drafted and negotiated a settlement term sheet, the Stipulation (including the exhibits thereto), and Supplemental Agreement with Defendants;

- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly;

- drafted the preliminary approval motion;

- oversaw the implementation of the notice process to Settlement Class Members; and

- drafted the motion for final approval.

68.    Attached hereto as Exhibit 4 is the Declaration of Jonathan Stern on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Stern Fee Declaration"). Attached as Exhibit 5 is the Declaration of Shannon Hopkins Concerning Attorneys' Fees and Expenses ("Hopkins Declaration"). The Stern Fee Declaration includes a chart containing each Rosen Law attorney's time on the Action. The Hopkins Declaration includes a chart containing each Levi & Korsinsky Attorney's time on the Action.

19

69.    Rosen Law and Levi & Korsinsky expended 1,987.9 hours in the investigation and prosecution of the Action, resulting in a lodestar of $1,932,793.60.  The requested fee amount of one-third of the Settlement Fund. That fund equals $4,750,000 and one-third of the value of the 25 Bitcoins, valued at $90,545.92 as of March 6, 2025, for a total value of $7,013,648. A one third fee would amount to $2,337,882.66, and therefore represents a lodestar multiplier of approximately 1.2.

70.    Moreover, Lead Counsel will continue to work towards effectuating the Settlement in the event the Court grants final approval. Among other things, Lead Counsel will continue working with the Claims Administrator to resolve issues with Settlement Class Member's claims, will respond to shareholder inquiries, will draft and file a motion for distribution, and will oversee the distribution process.  No additional compensation will be sought for this work.

71.    As detailed above, throughout this litigation, Lead Counsel devoted substantial time to the prosecution of the Action. Lead Counsel maintained control of, and monitored the work performed by, lawyers and other personnel on this case.  Throughout the litigation, Lead Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

72.    Lead Counsel's extensive efforts in the face of substantial risks and uncertainties have resulted in a significant recovery for the benefit of the Settlement Class.  In circumstances such as these, and in consideration of the hard work and the result achieved, we respectfully submit that the requested fee is reasonable and should be approved.

**2.    The Magnitude and Complexity of the Action**

73.    As detailed in the Fee Memorandum, securities class action cases are known for their notorious complexity.  This case was no different.  To build and settle the case, Lead Counsel,

20

among other things, needed to: (1) engage in a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company; (2) engage a damages and causation expert; (3) defeat, in part, the Underwriter and Stronghold Motions to Dismiss; (4) enage in discovery, including the review of more than 10,000 pages of documents; (5) draft and serve document requests on Defendants and met and conferred multiple times with Defense Counsel about their responses and objections to those document requests; (6) negotiated a protective order with Defense Counsel; (7) draft an ESI Protocol and met and conferred with Defense Counsel about it multiple times; (8) prepare the Class Certification Motion; (9) engage in arm's-length negotiations between experienced counsel with the assistance of a well-respected Mediator; (10) draft and negotiat a settlement term sheet, the Stipulation (including the exhibits thereto), and Supplemental Agreement with Defendants; (11) work with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly; (12) draft the preliminary approval motion; (13) oversee the implementation of the notice process to Settlement Class Members; and (14) draft the motion for final approval.

74.    The Parties zealously advocated their positions throughout the litigation and mediation process and it took several months before the Parties reached complete agreement and executed the Stipulation.

### 3.    The Significant Risks Borne By Lead Counsel

75.    This prosecution was undertaken by Lead Counsel on an entirely contingent-fee basis. From the outset, there was no guarantee that Lead Counsel would ever be compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and that

the considerable litigation costs required by a litigation like this one were covered. Upon Rosen Law's involvement in the Action, it was unknown how long litigation would last. With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, Lead Counsel and Levi & Korsinsky received no compensation during the course of the Action, and incurred $122,022.28 in out-of-pocket litigation-related expenses.

76.     Additionally, Lead Plaintiff alleged its claims without information gained through subpoena power, as Defendants argued that any attempt to do so was precluded by the PSLRA's automatic stay of discovery.

77.     Lead Counsel also bore the risk that no recovery would be achieved. As discussed above, from the outset, this litigation presented multiple risks and uncertainties that could have prevented any recovery whatsoever.

78.     Moreover, despite the most vigorous and competent of efforts, success in contingent-fee litigation like this one is never assured.  Lead Counsel know from experience that the commencement of a class action does not guarantee a settlement. *See supra*, ¶¶31-40. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

    **4.    The Quality of Representation, Including the Result Obtained, the Experience and Expertise of Leal Counsel, and the Standing and Caliber of Defendants' Counsel**

79.      As demonstrated by Rosen Law's firm resume, attached as Exhibit A to the Stern Fee Declaration, Lead Counsel is a highly experienced and skilled law firm that focuses its practice on securities class action litigation. Indeed, Lead Counsel has substantial experience in litigating securities class actions and has negotiated scores of other class settlements, which have been

approved by courts within the Second Circuit and throughout the country. Lead Counsel enjoys a reputation for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters, and Lead Counsel's experience added valuable leverage in the settlement negotiations. *See Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million securities settlement against Chinese company Alibaba, the Court stated that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case . . ."); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) (holding that "[T]he Rosen Law firm is well-qualified to serve as lead counsel" in a case involving Chinese company); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) (holding that "[t]he Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions" in case involving Chinese company); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 242 (E.D.N.Y. 2011) ("the Rosen Law Firm is well-qualified to serve as lead counsel in this matter"); *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at \*4 (E.D.N.Y. Jan. 6, 2021) ("The Rosen Law Firm, P.A . . . [is] capable and experienced in class litigation.").

80.    Lead Counsel also obtained a highly favorable result for the Settlement Class.

81.    Additionally, the quality of the work performed by Lead Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition. Here, the Defendants were represented by Tannenbaum Helpern Syracuse, & Hirschritt LLP, Willkie Farr & Gallagher LLP, and Faegre Drinker Biddle & Reath LLP well-known law firms that vigorously represented the interests of their clients throughout the Action. Indeed, from past experience, Lead Counsel know firsthand that Defense Counsel will zealously and persistently litigate for their clients through class certification, summary judgment, trial, and appeals. In the face of this experienced

and formidable opposition, Lead Counsel was nonetheless able to persuade Defendants to settle the case on terms favorable to the Settlement Class.

82.     Mr. Danilow took note of the quality of the work counsel performed during the mediation process and found that they were well prepared and knowledgeable. Ex. 1, Danilow Decl. ¶8.

### 5.     The Requested Fee In Relation to the Settlement

83.     The amount of the fee requested (one-third) in relation to the Settlement Amount ($4.75 million and 25 bitcoins) is fair and reasonable. Courts routinely award fees of one-third in securities class action settlements.

### 6.     Interests of Public Policy, Including the Need to Ensure the Availability of Experienced Counsel in High-Risk Contingent Securities Cases

84.     Courts have consistently recognized that it is in the public interest to have vigorous private enforcement of the federal securities laws.  If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action. Relatedly, it is long-recognized public policy that settlement is to be encouraged, including the resolution of fee applications that fairly and adequately compensate the counsel who bear the risks and dedicate the time, financial investment, and expertise necessary to achieve those settlements.

### 7.     The Reaction of the Class Supports Lead Counsel's Fee Request

85.     As noted above, as of March 6, 2025, 51,500 potential Settlement Class Members have been notified about the Settlement either by mailed Postcard Notice or emailed links to the Long Notice and Claim Form. Evans Decl. at ¶8. To date, no requests for exclusion and no objections have been received. *Id*. at ¶¶13-14. In addition, the Court-approved Summary Notice has been published in *Investor's Business Daily* and transmitted over *PR Newswire*. *Id.* at ¶10.  To

24

date, no objections to the maximum potential attorneys' fees request set forth in the Long Notice have been received or entered on this Court's docket. Any objections received after the date of this filing will be addressed in Lead Counsel's reply papers, set to be filed by April 4, 2025.

### 8. Lead Plaintiff Supports Lead Counsel's Fee Request

86. As set forth in the declarations submitted by Lead Plaintiff, Lead Plaintiff has concluded that Lead Counsel's requested fee is fair and reasonable based on the work performed, the recovery obtained for the Settlement Class, and the risks of the Action. *See* Exhibit 3, Declaration of Lead Plaintiff Allegheny ("ACERS Decl."), at ¶6. Lead Plaintiff has been intimately involved in this case, and its endorsement of Lead Counsel's fee request supports the reasonableness of the request and should be given weight in the Court's consideration of the fee award.

87. In sum, Lead Counsel accepted the Action on a fully contingent basis, committed significant resources, and prosecuted the Action without any compensation or guarantee of success. Based on the result obtained, the quality of the work performed, the litigation risks, and the contingent nature of the representation, Lead Counsel respectfully submit that a fee award of one-third of the Settlement Fund, resulting in a multiplier of 1.2, is fair and reasonable, and is supported by the fee awards courts have granted in other comparable cases.

### B. Reimbursement of the Requested Litigation Expenses is Fair and Reasonable

88. Lead Counsel and Levi & Korsinsky seeks $122,022.28 in litigation expenses to be paid from the Settlement Fund.

89. The Long Notice, Summary Notice, and Postcard Notice informed potential Settlement Class Members that Lead Counsel would be seeking reimbursement of litigation expenses in an amount not to exceed $250,000. The amount requested by Lead Counsel is well

below the $250,000 that Settlement Class Members were advised could be sought. To date, no objection has been raised as to the maximum amount of expenses set forth in both the Long Notice, Summary Notice, and Postcard Notice. If any objection to the request for reimbursement of litigation expenses is made after the date of this filing, Lead Plaintiff will address it in its reply papers.

90.     From the beginning of the case, Lead Counsel were aware that they might not recover their out-of-pocket expenses. Lead Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the contemporaneous lost use of funds advanced to prosecute the Action. Accordingly, Lead Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

91.     In my opinion, the expenses paid were necessary and appropriate for the prosecution and resolution of the Action. The expenses were incurred for professional services rendered by Lead Plaintiff's damages expert, investigator, costs of mediation, legal and factual research, translation of Chinese language documents, service of process, and other expenses incurred in the course of the litigation.

**C.     The Award to Lead Plaintiff**

92.     Lead Plaintiff seeks reimbursement, pursuant to 15 U.S.C. § 78u-4(a)(4), for the time it devoted to with its representation of the Settlement Class, in the amount of $10,000. Ex., 3, ACERS Decl., ¶9. Lead Plaintiff lost a significant amount of money on its investments in Stronghold securities and was highly motivated to, and did, work closely with Lead Counsel throughout the pendency of the Action to secure the highest possible recovery for himself and the Settlement Class.

93.     Additionally, Lead Plaintiff: (i) regularly communicated with Lead Counsel regarding the posture and progress of the case, as well as strategy; (ii) produced documents to Lead Counsel attorneys; (iii) reviewed all significant pleadings and briefs filed in the Action; (iv) consulted with its attorneys regarding the settlement negotiations; and (v) evaluated and approved the proposed Settlement. *Id*.

## VII.   CONCLUSION

94.     In view of the significant recovery for the Settlement Class and the substantial risks related to the prosecution of the Action, as described herein and in the accompanying Final Approval Memorandum, I respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should be approved as fair and reasonable.  I further submit that the requested fee in the amount of one-third of the Settlement Fund should be approved as fair and reasonable, reimbursement of litigation expenses, and Award to Lead Plaintiff, should also be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this Friday, March 7, 2025, at New York, New York.

*/s/ Jonathan Stern*
JONATHAN STERN

27