P4BKWINC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARK WINTER, et al.,

                 Plaintiffs,

          v.                              22-cv-03088-RA

STRONGHOLD DIGITAL MINING,
INC., et al.,
                                          Conference

                 Defendants.

------------------------------x
                                          New York, N.Y.
                                          April 11, 2025
                                          3:00 p.m.

Before:

                    HON. RONNIE ABRAMS,

                                     District Judge

                         APPEARANCES

THE ROSEN LAW FIRM PA
     Attorneys for Plaintiffs
BY:  JONATHAN STERN

VINSON & ELKINS LLP
     Attorneys for Defendants Gregory Beard, William Spence,
and Stronghold Holdings
BY:  CLIFFORD L. THAU

WILLKIE FARR & GALLAGHER LLP
     Attorneys for Underwriter Defendants
BY:  JEFFREY B. KORN

FAEGRE DRINKER BIDDLE & REATH LLP
     Attorneys for Defendant Ricardo Larroude
BY:  SANDRA D. GRANNUM

P4BKWINC

(Case called)

MR. STERN:  Jonathan Stern, of the Rosen Law Firm, for Lead Plaintiff Allegheny Employees Retirement System and the class.

THE COURT:  Good afternoon.

MR. STERN:  Good afternoon, your Honor.

MR. THAU:  Good afternoon, your Honor.  Cliff Thau for Stronghold and Individuals Greg Beard and William Spence and Stronghold Holdings.

MR. KORN:  Good afternoon, your Honor.  Jeffrey Korn, of Willkie Farr & Gallagher, for the underwriter defendants.

THE COURT:  Good afternoon.

MS. GRANNUM:  Good afternoon, your Honor.  Sandra Grannum, with Faegre Drinker, for defendant Ricardo Larroude.

THE COURT:  Thank you, all, for being here.

We are here, of course, for a hearing for the final approval of a class action settlement.

So, would plaintiff like to be heard?  I've obviously reviewed the materials, but if there's anything you'd like to say for the record, let me know.

MR. STERN:  Your Honor, if there's anything specific you want to be heard on, I'm prepared to do so, but, if not, we are prepared to proceed.

THE COURT:  How many claims have been filed to date?

MR. STERN:  I believe it was about 10,000 claims,

P4BKWINC

representing about $60 million.

THE COURT:  And I'm just going to confirm, since the filing of this, that no objections have been filed?

MR. STERN:  No objections have been filed.  We had one potential shareholder contacting us, saying he wanted to be excluded, but he didn't provide any documentation for exclusion.  So we've had no objections and no valid requests.

THE COURT:  And approximately 10,000 claims, was it?

MR. STERN:  Yes.

THE COURT:  Would any of the defendants like to be heard?

MR. THAU:  Not unless your Honor has any questions for us.

THE COURT:  I don't think so.  Thank you.

MR. THAU:  One question for you, your Honor:  Do you want your door open, or do you care?

THE COURT:  I do not care, as long as it's not locked.  It's a public courtroom.  But is it hard to hear?

MR. THAU:  No.  I'm just asking.

THE COURT:  No, it's fine.  Thank you.

So I'm ready to rule.  I'm going to do it orally just for efficiency.  I know it can be a little bit painful, but you will, of course, have a transcript, which you can and should order from the court reporter.

So, Lead Plaintiff Allegheny County Employees

Retirement System, on behalf of itself and the settlement class, and Defendants Stronghold Digital Mining, Inc. ("Stronghold"), Gregory A. Beard, William B. Spence, B. Riley Securities, Inc., Cowen and Company, LLC, Tudor, Pickering, Holt & Co. Securities, LLC, D.A. Davidson & Co., Compass Point Research & Trading, LLC, Northland Securities, Inc., and Ricardo R. A. Larroudé, have entered into a class-action settlement agreement to resolve claims of violations of the Securities Act.  Specifically, Plaintiffs allege that Stronghold's offering documents contained false and/or misleading statements.

On December 16, 2024, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court preliminarily certified a settlement class.  The settlement class-subject to certain exclusions-was defined as: "all persons and entities who or which purchased or otherwise acquired Stronghold Class A common stock on or before December 20, 2021, pursuant and/or traceable to the Offering Documents issued in connection with the Class A common stock initial public offering in October 2021, and were damaged thereby."  Preliminary Approval Order at 2-3, ECF No. 125.

"In addition, the Court preliminarily found that the settlement class met all the Federal Rule of Civil Procedure 23 prerequisites for class certification, for the purpose of settlement only, including numerosity, commonality, typicality,

P4BKWINC

predominance of common issues, and superiority. *Id*. at 3-4. No material changes have occurred since that order that would alter this Court's ruling. The Court therefore now finally approves certification of the settlement class.

Rule 23(e) requires court approval of a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).

I will turn now to Rule 23(e), which requires me to consider four factors.

The Second Circuit has explained that "the first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023). I will address each factor in turn.

The first Rule 23(e) factor is whether the class representatives and class counsel have adequately represented the class, which "typically entails inquiry into whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Here, Lead Plaintiff does not have interests that are antagonistic or at odds with the putative class. Indeed, its "interests are aligned with other class members' interests

because they suffered the same [alleged] injuries," *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019)-namely, injury resulting from Defendants' alleged violations of the Securities Act.  The record also reflects that lead counsel is experienced and qualified and prosecuted this case vigorously for its duration.  Stern Decl.  67, ECF No. 131.  Accordingly, I find that the first Rule 23(e) factor is satisfied.

The Court further finds that the settlement was reached after engaging in a mediation before Greg Danilow.  See Danilow Decl, ECF No. 131-1.  The mediator's participation underscores that it is the product of non-collusive, arm's-length negotiations.  See *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  The second Rule 23(e) factor is therefore satisfied.

I will now turn to the third and fourth Rule 23(e) factors.  To guide my consideration of these factors, I look to the nine factors set forth in the Second Circuit's decision *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which "largely overlap" with Rule 23(e), Moses, 79 F.4th at 244.

The third Rule 23(e) factor requires me to consider whether the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal. "This assessment implicates several Grinnell factors."  *In re*

P4BKWINC

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019).

The first *Grinnell* factor considers the complexity, expense and likely duration of the litigation.  Litigation through trial would be complex, expensive, and long.  Indeed, "securities class actions are by their very nature complicated and district courts in this Circuit have long recognized that [they] are notably difficult and notoriously uncertain to litigate."  *City of Providence v. Aeropostale,* 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014).  Further litigation would have involved extensive fact and expert discovery, a class certification motion, summary judgment motions, and *Daubert* motions.  That, plus trial on several potentially complicated issues and any subsequent appeal, would require significant time and expense.  This factor favors final approval as well.

Next are the fourth, fifth, and sixth Grinnell factors: the risks of establishing liability; the risks of establishing damages; and the risks of maintaining the class through the trial.  These factors also favor approval.  "In assessing the risks of liability, a court need not decide the merits of the case, resolve unsettled legal questions, or attempt to predict the outcome.  Rather, a court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *In re Namenda Direct Purchaser Antitrust Litigation,* 462 F. Supp. 3d 307, 313

(S.D.N.Y. 2020).

Here, Plaintiffs would have faced numerous risks if they had continued to litigate.  For example, Plaintiffs may have failed to establish that Stronghold's offering documents contained materially false or misleading statements and may have failed to refute Defendants' affirmative defenses. Additionally, Plaintiffs would have faced significant challenges in proving damages, which in securities cases is a "a complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and the stock's true value absent the alleged fraud."  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Just to be clear, I'm quoting from a number of cases that are very familiar to you all.  I'm not going to cite them just for efficiency today, but what I can do, if you'd like me to do it, is just have the court reporter add in the case citations into the transcript.

Is everyone comfortable with that practice?

MR. STERN:  Yes, your Honor.

MR. THAU:  Yes, your Honor.

THE COURT:  That is especially so here, where Defendants would have advanced a negative causation defense.

Finally, Defendants would have opposed class certification.  Plaintiffs faced a risk that one or more of

P4BKWINC

Defendants' arguments would succeed.  The proposed settlement eliminates that risk.

I must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Rule 23(e)(C)(ii). "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate.  An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).  "In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel."  *In re EVCI Career Colleges Holding Corp. Securities Litigation,* Nos. 05-cv-10240 et al. (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007).

First, I find that the notice plan and proposed method of distribution — as described in both the Settlement Agreement and the Declaration of Sarah Evans, ECF No. 131-2, among other sources — are effective and consistent with standard means that are frequently used in similar class actions.  Second, because the plan of allocation has a clear rational basis, treats class members equitably, and was devised by experienced class counsel, I find it fair and adequate.

I next consider "the terms of any proposed award of

P4BKWINC

attorney's fees, including timing of payment."  Rule 23(e)(C)(iii).  Pursuant to Rule 23(h), class counsel seeks attorneys' fees equal to approximately one-third of the settlement fund.  The trend in the Second Circuit is to use the percentage-of-the-fund method to compensate attorneys in common-fund cases, although the Court has discretion to award attorneys' fees based on either the lodestar method or the percentage-of-recovery method.  See, e.g., *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 723 (2d Cir. 2023).

Reasonableness is the touchstone when determining whether to award attorneys' fees.  In *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the Second Circuit set forth six factors to determine the reasonableness of a fee application.

Regarding the first *Goldberger* factor, the time and labor expended by counsel, Plaintiffs' counsel claims that they spent 1,987.9 hours on the litigation over the course of this action, which included extensive motion practice, discovery, and settlement negotiations.  Stern Decl.  69.

Regarding the second and third *Goldberger* factors, this action had the potential to be complex and risky, as "[s]ecurities class actions such as this are notably difficult and notoriously uncertain."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010).

Regarding the fourth, fifth, and sixth *Goldberger*

P4BKWINC

factors, counsel are experienced in this area and have provided vigorous representation.  See Stern Decl., ECF No. 131. District courts in this Circuit routinely award one-third percentage recoveries in contingency-fee cases.  *See Knapp v. Badger Techs., Inc.*, No. 12-CV-6637-CJS-MWP, 2015 WL 3745303 (W.D.N.Y. June 15, 2015) (collecting cases); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-CV-2548 (VSB), 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019); see also *Solis v. OrthoNet LLC*, No. 19-CV-4678 (VSB), 2021 WL 2678651, at *2 (S.D.N.Y. June 30, 2021) (collecting FLSA cases).

Additionally, no class member has objected to or requested exclusion from the settlement, which favors approval. See, e.g., *Guevoura Fund Ltd. v. Sillerman,* No. 1:18-cv-09784 (CM), 2019 WL 6889901, at *22 (absence of objections "militates in favor of approval of the [f]ees as requested.").

It seems like one did request exclusion but didn't provide the necessary documentation to be excluded.

Is that correct?

MR. STERN:  Yes.  And, therefore, we actually don't know if this person was actually a class member because we don't know when their trades were or how many trades they had. They provided no documentation.

THE COURT:  Did you indicate to that person what documentation needed to be provided and by when?

MR. STERN:  Yes.  We indicated that they needed to

P4BKWINC

provide trading documentation and the deadline.  And the person replied, I believe, that they didn't have any records of their trades.

THE COURT:  That's what they said?

MR. STERN:  That's what they said, yes.

THE COURT:  Okay.

Having considered these factors, I find that the contingent fee is reasonable under the circumstances.

Additionally, the parties have represented that the Bitcoin-indexed portion of the fee award will be paid in installments, in accordance with the payment schedule set forth in paragraph 6 of the settlement agreement.  I want to make clear that my approval of the fee award requires it to be paid in that manner — that is, on the same schedule as the payments to the class.  Doing so guarantees that, at the end of the two-year installment period, the fee award will constitute a reasonable fee in relation to the real value of the settlement fund, and not only in relation to the nominal value of the fund.

The proposed one-third fee is also reasonable when "cross-checked" against the lodestar amount.  See *Goldberger*, 209 F.3d at 50.  Based on counsel's current billing rates, the lodestar amount is $1,932,793.60.  Stern Decl.  69.  The cash portion of the fee award is $1.58 million, which is a lodestar cross-check multiplier of 0.82.

P4BKWINC

Courts within this district have awarded lodestar multiples over four in common-fund cases. See *In re BioScrip, Inc. Securities Litigation,* 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017) (collecting cases); see also *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08-cv-7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").

As of this morning, Bitcoin was priced at approximately $82,000, making the Bitcoin-indexed portion of the fee award worth approximately $683,333, and the total fee award worth $2,263,333.  Thus, at today's Bitcoin price, the overall lodestar cross-check multiplier is 1.17.  Given (1) the relatively low likelihood that, over the next two years, Bitcoin's value will increase so significantly that counsel's fee award will grow unreasonably large; (2) the fact that any such increase would accrue equally to the benefit of the class; and (3) that counsel also assume the risk that Bitcoin will decrease in value, I find the fee to be reasonable in relation to the value of the work performed.

Just to pause there, would you all agree with everything I just stated?

MR. STERN:  Yes, your Honor.  Just for clarification,

P4BKWINC

so the fee will be paid monthly.  Our intention is that we will file for a motion for distribution once or possibly twice, depending on how long it takes to get that to us.  But we were going to collect our fee on a monthly basis for class counsel, but the fee that will go to the clients -- or for the class members just for efficiency sake, we would send out just one or two checks.

THE COURT:  I just want to make sure that I have a full understanding of how this is going to be calculated in light of that.

MR. STERN:  Yes, so the calculation will be exactly identical.  Each time that a payment is made from the Bitcoin portion over the next 24 months minus — it's actually the next 21 months at this point — we would extract one-third of that.  And so we would use the value that is paid on each month, and that would be the portion of the plaintiffs' counsel's fee.

THE COURT:  And I know I asked for a letter on this, and I just want to make sure -- I'm just pulling it up.

MR. STERN:  But, yes, your Honor, it is our intention that, whatever the monthly payment is, in installments, we would receive one-third of that.

THE COURT:  Okay, yes.  That's what I want to make sure.

MR. STERN:  Yes.

THE COURT:  It is that one-third figure?

P4BKWINC

MR. STERN:  Yes, your Honor.

THE COURT:  Okay.

Finally, as pertains to the third Rule 23(e) factor, the parties have entered into a confidential agreement establishing conditions under which Stronghold may terminate the settlement if the settlement class members who collectively have claims equating to a certain dollar amount under the Plan of Allocation request exclusion from the settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Ma,* 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

Moving to the fourth Rule 23(e) factor, I find that the proposal treats class members equitably relative to each other.  All class members have the opportunity to submit claims.  Claims will be distributed pro rata based on each claimant's recognized loss.  Courts in this Circuit routinely approve pro rata allocation schemes.  See, *e.g., Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20 CV 456 (RPK)(LB), 2021 WL 7906584, *9 (E.D.N.Y. May 25, 2021) ("Distribution plans which distribute the settlement award based on each class member's pro rata share, have been found to be fair and rational.") (collecting cases).

The settlement agreement also provides that Lead Plaintiff will receive an incentive award in the amount of

P4BKWINC

$10,000.  In the Second Circuit, there is "clear precedent that permits district courts to approve fair and appropriate incentive awards to class representatives."  *Moses*, 79 F.4th at 253.  Incentive awards are common in class actions in this Circuit and are intended to "compensate the named plaintiffs for their willingness to serve the class, the service they rendered, risks they bore, and opportunities sacrificed to ensure a favorable class settlement."  *Henry v. Little Mint, Inc.,* No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014).  Such payments are "usually within the range of $1,000-$20,000."  *Moses*, 79 F.4th at 255 n.12.

Class counsel have represented that Lead Plaintiff "work[ed] closely with Lead Counsel throughout the pendency of the Action to secure the highest possible recovery for [it]self and the Settlement Class."  Stern Decl. 92.  Accordingly, I find that the requested award payment is reasonable and not excessive or otherwise inequitable.

Having concluded that all four Rule 23(e) factors are satisfied, I will now address the remaining *Grinnell* factors. "Not every factor must weigh in favor of the settlement." *Christine Asia Co. v. Yun Ma,* Nos. 15-mc-02631 et al. (CM), 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019).  Rather, "the court should consider the totality of these factors in light of the particular circumstances."  *Id*.

With respect to the second *Grinnell* factor, the class

P4BKWINC

members' reactions to the settlement have been positive to date. The class administrator reported that settlement notice has reached nearly the entire settlement class. Evans Decl. 3-4, ECF No. 132-1.

That's correct?

MR. STERN: Yes, your Honor.

THE COURT: No class members have opted out or provided the necessary information such that they could opt out?

MR. STERN: Yes, your Honor.

THE COURT: Okay.

And I think you said 10,000 class members have filed claims to date, correct?

MR. STERN: Yes, your Honor.

THE COURT: Okay. Approximately?

MR. STERN: Approximately.

THE COURT: "The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness." *Sow v. City of New York,* No. 21-cv-00533 (CM), 2024 WL 964595, at *2 (S.D.N.Y. Mar. 5, 2024); see also *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669 BMC, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) (collecting cases and authorities). Accordingly, here, the overwhelmingly favorable response demonstrates that the class approves of the settlement and supports final approval.

P4BKWINC

With respect to the third *Grinnell* factor, the stage of the proceedings and amount of discovery completed, "the pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 PAC, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010), aff'd, 519 F. App'x 1 (2d Cir. 2013).  The parties engaged in formal discovery and motion practice, which enabled them to evaluate the relative strength of their claims and defenses.  This factor weighs in favor of approval.

Turning to the seventh *Grinnell* factor, the parties have represented that Defendants may not be able to withstand a greater judgment, particularly in light of Stronghold's limited D&O insurance coverage.  See Mot. at 18, ECF No. 128. Moreover, a defendant is not required to empty its coffers before a settlement can be found adequate." *Stinson v. City of New York*, 256 F. Supp. 3d 283, 294 (S.D.N.Y. 2017).  This factor therefore weighs in favor of approval.

Finally, the eighth and ninth *Grinnell* factors require me to consider the amount of the settlement in light of the best possible recovery and the attendant risks of litigation. The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *City of Providence v. Aeropostale, Inc.*, No. 11-cv-07132 (CM), 2014 WL 1883494, at *9 (S.D.N.Y. May 9,

P4BKWINC

2014).  Instead, "there is a range of reasonableness with respect to a settlement-a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Stinson v. City of New York,* 256 F. Supp. 3d 283, 294 (S.D.N.Y. 2017).  This is because "settlement assures immediate payment . . . to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 CIV. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008), and "few cases tried before a jury result in a verdict awarding the full amount of damages claimed," *In re Indep. Energy Holdings PLC,* No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).

Plaintiffs' damages expert estimated a maximum of $97 million recoverable in statutory damages, which would be reduced to $54.3 million if Plaintiffs could recover only on statistically significant drops related to the misstatements. See Mot. at 12.  The $4.75 million cash portion of the settlement therefore amounts to between 4.9% and 8.75% of the best possible recovery.  In securities fraud class actions,

P4BKWINC

courts have generally approved settlement amounts ranging from 3% to 7% of the class members' estimated losses.  See *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at \*5 (S.D.N.Y. May 13, 2011).  I therefore find the $4.75 million cash portion of the settlement alone to be reasonable, before considering the Bitcoin-indexed portion.

When the Bitcoin-indexed portion of the settlement is included, at today's BTC price of approximately $82,000, the settlement fund is worth approximately $6,800,000.  I therefore find the total settlement amount to be reasonable, given that it will be worth at least 4.9% of the best possible recovery (in the unlikely event Bitcoin becomes worthless), is today worth between 7% and 12.5% of the best possible recovery, and there is no upper limit to what it may be worth as paid.

Accordingly, I find that this factor weighs in favor of final approval.

I just want to confirm that everything I have said to date, in terms of the figures, is consistent with all of your understandings, correct?

MR. STERN:  Yes, your Honor.

THE COURT:  Okay.  I just want to make sure that we're all on the same page.

For the reasons stated, I conclude that the settlement is both procedurally and substantively fair.  In light of the "strong judicial policy in favor of [class action]

P4BKWINC

settlements," *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005), the proposed Settlement is approved.

So that's my ruling.  I'll sign a very brief order to this effect, but you should reach out to the court reporter to get a copy of the transcript of today.

Are there any other applications?  Anything else anyone would like to place on the record?

MR. STERN:  Nothing from plaintiffs, your Honor.

MR. THAU:  Nothing from defendants, your Honor.

MR. KORN:  Nothing.

THE COURT:  Thank you, all, for your patience.

And have a good weekend.

MR. STERN:  Thank you, your Honor.

(Adjourned)